Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

## FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued May 8, 2003              Decided July 8, 2003

No. 02-1013

DETROIT EDISON COMPANY,
PETITIONER

v.

FEDERAL ENERGY REGULATORY COMMISSION,
RESPONDENT

MIDWEST ISO TRANSMISSION OWNERS, ET AL.,
INTERVENORS

————

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

————

*John D. McGrane* argued the cause for petitioner. With him on the briefs were *Mary Ann K. Huntington* and *Gregory W. Camet*.

*Jennifer L. Key* argued the cause and filed the briefs for intervenor Southern California Edison Company.

————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

*Larry D. Gasteiger*, Attorney, Federal Energy Regulatory Commission, argued the cause for respondent. With him on the brief were *Cynthia A. Marlette*, General Counsel, and *Dennis Lane*, Solicitor.

*Gregg K. Stepan* argued the cause for intervenor Midwest Independent Transmission System Operator, Inc. On the brief were *Stephen G. Kozey* and *Stephen L. Teichler*.

Before: EDWARDS, SENTELLE and TATEL, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

SENTELLE, *Circuit Judge*: Detroit Edison Co. petitions for review of a Federal Energy Regulatory Commission (FERC or Commission) order accepting a tariff filing that allows retail customers to take electric distribution service under the FERC tariff. Because we agree with Detroit Edison that FERC exceeded its statutory jurisdiction by accepting the tariff, we grant the petition for review.

## I. Background

### A.   Statutory and Regulatory Background

The electric industry provides three principal services: the generation of electric energy, the transmission of that energy, and the distribution of that energy from the transmission facilities to individual customers. *See Transmission Access Policy Study Group v. FERC*, 225 F.3d 667, 690–91 (D.C. Cir. 2000) ("*TAPSG*"), *aff'd sub nom. New York v. FERC*, 535 U.S. 1 (2002). These services reflect the three principal types of facilities in the industry: generating facilities used to produce energy, transmission facilities used to transmit energy in bulk over long distances (generally at higher voltages), and local distribution facilities used to distribute the energy to individual customers (generally at lower voltages). *See id.* Service is further divided into wholesale and retail service. Wholesale service involves the transmission or distribution of electric energy to customers that will resell the energy to end users. *Id.* Retail service, by contrast, denotes transmission or distribution to end users. *Id.*

Section 201(b)(1) of the Federal Power Act (FPA) grants FERC jurisdiction over "transmission of electric energy in interstate commerce[,] . . . the sale of electric energy at wholesale in interstate commerce," and the facilities used for such transmissions and wholesale transactions. 16 U.S.C. § 824(b)(1) (2000). States retain jurisdiction "over facilities used in local distribution." *Id.*

In its landmark Order 888,[1] FERC was forced to reevaluate its statutory jurisdiction in light of the Order's measures to increase competition and deregulation in the electric energy market. Prior to Order 888, "electric utilities were vertically integrated, owning generation, transmission, and distribution facilities and selling these services as a 'bundled' package to wholesale and retail customers in a limited geographical service area." *Pub. Util. Dist. No. 1 of Snohomish County, Wash. v. FERC*, 272 F.3d 607, 610 (D.C. Cir. 2001). FERC found that public utilities were using their monopoly control over interstate transmission facilities to gain advantage over potential competitors for sales of energy. *See generally TAPSG*, 225 F.3d at 681–83. Addressing these concerns, Order 888 mandated that the wholesale transmission of electric energy be unbundled from the sale of power. Order 888 at 31,635–36. FERC required utilities to file open access nondiscriminatory tariffs that contain the minimum terms and conditions of nondiscriminatory wholesale transmission services, which FERC prescribed in a *pro forma* tariff. *Id.* In addition, Order 888 provided that if state commissions order "unbundling" of retail transmissions, open

[1] *Promoting Wholesale Competition Through Open Access Nondiscriminatory Transmission Services by Public Utilities and Transmitting Utilities*, Order No. 888, FERC Stats. & Regs. ¶ 31,036, 61 Fed. Reg. 21,540 (1996), *clarified*, 76 FERC ¶ 61,009 and 76 FERC ¶ 61,347 (1996), *on reh'g*, Order No. 888–A, FERC Stats. & Regs. ¶ 31,048, 62 Fed. Reg. 12,274, *clarified*, 79 FERC ¶ 61,182 (1997), *on reh'g*, Order No. 888–B, 81 FERC ¶ 61,248, 62 Fed. Reg. 64,688 (1997), *on reh'g*, Order No. 888–C, 82 FERC ¶ 61,046 (1998), *aff'd in part and remanded in part sub nom. TAPSG*, 225 F.3d 667, *aff'd sub nom. New York*, 535 U.S. 1.

access requirements apply to unbundled retail transmission service as well. *Id.*

In light of the unbundling and open access requirements, FERC made several jurisdictional determinations. First, FERC concluded that, pursuant to FPA § 201(b)(1), it has jurisdiction over the interstate transmission of electric energy to any wholesale or unbundled retail customer. Order 888 at 31,980; *New York*, 535 U.S. at 11. Importantly, FERC realized that unbundled retail "wheeling" (the collective process of transmission and distribution) could involve service over transmission facilities, as well as service over local distribution facilities. Order 888 at 31,980. Recognizing the statutory limit on its jurisdiction over local distribution facilities, FERC created a seven-factor test to determine whether a given facility is a local distribution facility (over which FERC has no jurisdiction) or a transmission facility (over which FERC does have jurisdiction). *Id.* at 31,770–71, 31,981; *New York*, 535 U.S. at 23; *TAPSG*, 225 F.3d at 695. The seven-factor test considers the following: (1) local distribution facilities are normally in close proximity to retail customers; (2) local distribution facilities are primarily radial in character; (3) power flows into local distribution systems, it rarely if ever, flows out; (4) when power enters a local distribution system it is not reconsigned or transported on to some other market; (5) power entering a local distribution system is consumed in a comparatively restricted geographic area; (6) meters are based at the transmission local distribution interface to measure flows into the local distribution system; and (7) local distribution systems will be of reduced voltage. Order 888 at 31,981.

When a local distribution facility is used to delivery energy to an unbundled retail customer, FERC lacks any statutory authority, and the state has jurisdiction over that transaction. Order 888 at 31,981; *New York*, 535 U.S. at 22–23. By contrast, when a local distribution facility is used in a wholesale transaction, FERC has jurisdiction over that transaction pursuant to its wholesale jurisdiction under FPA § 201(b)(1). Order 888 at 31,980; *TAPSG*, 225 F.3d at 695. In sum, FERC has jurisdiction over all interstate transmission service

and over all wholesale service, but FERC has no jurisdiction over unbundled retail distribution service–*i.e.*, unbundled retail service over local distribution facilities. For our purposes, the most important result of these jurisdictional determinations is that customers can take any FERC-jurisdictional service under a utility's open access tariff, which the utility is required to file with FERC. Customers must take non-FERC-jurisdictional service, such as unbundled retail distribution, under a state tariff.

Finally, Order 888 addressed the concern that unbundled retail customers could take distribution service under FERC-jurisdictional transmission tariffs (*i.e.*, open access tariffs on file with FERC) in lieu of state-jurisdictional tariffs, to avoid stranded costs charges assessed by state utility commissions. Order 888 at 31,772, 31,783. FERC affirmed that states have jurisdiction over local distribution "service"–*i.e.*, the service of delivering electricity to end users–even "where there are no identifiable local distribution facilities." *Id.* at 31,783. Thus, FERC concluded that state utilities would be able to impose stranded costs charges through their jurisdiction over local distribution. *Id.*

B. Proceedings Before the Commission

In compliance with Order 888, Midwest Independent Transmission System Operator (Midwest), a company that operates but does not own electric transmission facilities, filed its Open Access Transmission Tariff (OATT). Midwest's OATT adopted the *pro forma* tariff's definition of "Eligible Customer," which includes "any retail customer taking unbundled Transmission Service pursuant to a state retail access program or pursuant to a voluntary offer of unbundled retail transmission service by the Transmission Provider." Order 888 at 31,931. On September 16, 1998, FERC conditionally accepted Midwest's OATT. *See Midwest Indep. Transmission Sys. Operator, Inc.*, 84 FERC ¶ 61,231 (Initial Order).

In the Initial Order, FERC required that Midwest's OATT be modified to specify how wholesale transmission customers

would obtain wholesale distribution services when a local distribution facility is involved. *Id.* at 62,172. Consistent with Order 888's jurisdictional determination, the Initial Order emphasized: "Of course, local distribution services for *retail* transmission customers will be subject to the jurisdiction of the state commission." *Id.* (emphasis added).

In response to the Initial Order, Midwest filed a revised OATT (Compliance Filing), which defined "Wholesale Distribution Service" to mean "[t]he provision of distribution service over a Transmission Owner's Distribution Facilities necessary to effectuate a transaction under this [OATT]." The term "Distribution Facilities" was circularly defined to include "[t]he facilities owned or controlled by a Transmission Owner and used to provide Wholesale Distribution Service." Paradoxically, then, Midwest's OATT defined "Wholesale Distribution Service" in such a way as to possibly cover retail distribution service as well as wholesale distribution service.

Detroit Edison protested the Compliance Filing because it was concerned that unbundled retail customers could take distribution service under the FERC-jurisdictional tariff (*i.e.*, Midwest's OATT), and thus avoid paying stranded costs charges assessed by the Michigan Public Service Commission. On April 16, 1999, FERC accepted Midwest's Compliance Filing and rejected Detroit Edison's protest. *Midwest Indep. Transmission Sys. Operator, Inc.*, 87 FERC ¶ 61,085 (Compliance Order). FERC reasoned that nothing in the Compliance Filing changed the definition of "Eligible Customer," which was adopted from the *pro forma* tariff. *Id.* at 61,364. Under this definition, FERC held that a retail customer could take service over "FERC-jurisdictional distribution facilities" so long as the state had unbundled its transmission service or the transmission provider voluntarily offered transmission service. *Id.* FERC did not address Detroit Edison's argument that Midwest's OATT exceeded FERC's jurisdiction by allowing an unbundled retail customer to take distribution service under the FERC tariff.

Detroit Edison filed a petition for rehearing, arguing that allowing unbundled retail distribution customers to take ser-

vice under the OATT would exceed FERC's statutory jurisdiction, contradict Order 888 and FERC precedent, and interfere with states' attempts to allocate stranded costs. FERC denied rehearing. *Midwest Indep. Transmission Sys. Operator, Inc.*, 97 FERC ¶ 61,178 (2001) (Rehearing Order). The Commission again attempted to justify the OATT based on its jurisdiction over unbundled retail *transmission* service. *Id.* at 61,827. Furthermore, in addressing contrary Commission precedent, FERC held that it has jurisdiction over any transaction occurring at a facility that does not serve exclusively retail customers. *Id.* FERC did not mention Order 888's seven-factor test for distinguishing local distribution facilities from transmission facilities.

Detroit Edison filed this petition for review of the Compliance Order and the Rehearing Order.

## II. Analysis

In its petition, Detroit Edison renews its contention that FERC exceeded its statutory jurisdiction by approving the OATT and assuming jurisdiction over unbundled retail distribution service. Before deciding that issue, however, we must address FERC's assertion that we lack jurisdiction over Detroit Edison's petition. FERC argues that Detroit Edison's petition constitutes an impermissible and untimely collateral attack on the "Eligible Customer" definition included in Order 888's *pro forma* tariff. We disagree.

### A. Collateral Attack

As outlined above, *supra* at 3, FERC included in Order 888 a *pro forma* tariff prescribing the minimum terms and conditions of nondiscriminatory transmission services and defining which entities are eligible to take service under a FERC tariff. In relevant part, the *pro forma* tariff defines an "Eligible Customer" as "any retail customer taking unbundled Transmission Service pursuant to a state retail access program or pursuant to a voluntary offer of unbundled retail transmission service by the Transmission Provider." Order 888 at 31,931. Shortly after Order 888's promulgation, several parties, including Detroit Edison, challenged the "Eligible

Customer" definition. Detroit Edison argued that the "Eligible Customer" definition should "exclude any reference to transmission service provided to retail customers" because otherwise potential retail transmission customers would forum shop between the FERC tariff and a state-jurisdictional retail wheeling tariff. Order 888–A at 30,213. On rehearing, FERC declined to exclude unbundled retail transmission customers from the class of eligible customers. Rather, the Commission reaffirmed its authority over the rates, terms, and conditions of unbundled retail transmission. Order 888–A at 30,215 (citing Order 888 at 31,780, 31,966–81); *New York*, 535 U.S. at 16–24 (affirming FERC's jurisdiction over unbundled retail transmission).

FERC argues that Detroit Edison's petition merely renews Detroit Edison's once-rejected attack on the *pro forma* tariff's "Eligible Customer" definition, which Midwest's OATT incorporates verbatim. We disagree. In considering Detroit Edison's protest, FERC never held or even intimated that Detroit Edison was collaterally attacking Order 888's definition of "Eligible Customer." The Commission may not "recast its view" of Detroit Edison's claim at this stage. *ANR Pipeline Co. v. FERC*, 71 F.3d 897, 900–01 (D.C. Cir. 1995) (rejecting collateral attack argument raised for the first time before the Court). In any event, Detroit Edison's petition does not challenge the definition of "Eligible Customer." Contrary to FERC's argument, Detroit Edison no longer contests that unbundled retail customers are eligible to receive transmission service. Rather, Detroit Edison contends that such customers may not take *distribution* service under a FERC tariff. As noted above, Order 888 plainly recognizes the difference between the transmission and distribution components of retail wheeling. The issue Detroit Edison raises then, is not "Which customers are eligible?" but "What type of service are the 'Eligible Customers' eligible for?" Nothing in the "Eligible Customer" definition tells us whether eligible retail customers may receive distribution service under a FERC-jurisdictional tariff. Consequently, Detroit Edison is not collaterally attacking the "Eligible Customer" definition.

We therefore have jurisdiction over Detroit Edison's petition for review.

B. Statutory Jurisdiction

FERC's interpretation of its own statutory jurisdiction is entitled to *Chevron* deference. *See TAPSG*, 225 F.3d at 694 (citing *Chevron U.S.A. Inc. v. Natural Res. Def. Council*, 467 U.S. 837 (1984)). Nonetheless, we hold that FERC clearly exceeded its statutory jurisdiction by accepting Midwest's OATT, which allows unbundled retail customers to take distribution service under a FERC tariff. Section 201(b)(1) of the FPA denies FERC jurisdiction over local distribution facilities and any unbundled retail service occurring over those facilities. 16 U.S.C. § 824(b)(1). Until now, both the Commission and the courts have consistently reaffirmed this jurisdictional boundary. *New York*, 535 U.S. at 21–23; *TAPSG*, 225 F.3d at 691, 695–96; Order 888 at 31,784. As late as the Initial Order in this case FERC correctly stated: "Of course, local distribution services for retail transmission customers will be subject to the jurisdiction of the state commission." 84 FERC at 62,172. FERC now advances two arguments in an attempt to explain its about-face and harmonize its orders with the statutory limits on its jurisdiction. Neither argument is persuasive.

First, the Commission contends that Midwest's OATT does not exceed FERC's statutory jurisdiction because the OATT only allows unbundled retail customers to take distribution service over "FERC-jurisdictional distribution facilities." Compliance Order, 87 FERC at 61,364. FERC defines such a facility as any distribution facility that is not "used exclusively to provide service to unbundled retail customers." Rehearing Order, 97 FERC at 61,827. FERC asserts that Midwest's distribution facilities are FERC-jurisdictional because they are used for both wholesale and retail distribution. Therefore, FERC claims jurisdiction to set rates for all service occurring over such facilities, including unbundled retail distribution service.

FERC's position contradicts the plain language of the FPA. Section 201(b)(1) denies FERC jurisdiction over "facilities

used in local distribution." 16 U.S.C. § 824(b)(1). FERC would rewrite the statute to exclude only "facilities used *exclusively* in local distribution." Such an interpretation would eviscerate state jurisdiction over numerous local facilities, in direct contravention of Congress' intent. *See New York*, 535 U.S. at 22 (recognizing "Congress' intent to preserve state jurisdiction over local facilities"). Moreover, the orders under review totally ignore Order 888's carefully formulated seven-factor test for distinguishing between local distribution facilities and "FERC-jurisdictional facilities," which this Court ultimately approved. *See* Order 888 at 31,770–71, 31,981, *aff'd in TAPSG*, 225 F.3d at 696. FERC's interpretation disregards the statutory language and relevant precedent to expand impermissibly its statutory jurisdiction.

FERC's second argument is even weaker than its first. FERC contends that Midwest's OATT does not usurp state jurisdiction because a retail customer is eligible for distribution service under the OATT only if the state has voluntarily unbundled its retail service or a transmission provider voluntarily provides the desired distribution service. In essence, FERC claims that Midwest's OATT does not exceed FPA § 201's jurisdictional limits because it clearly comports with FPA § 212(h), 16 U.S.C. § 824k(h), which prohibits the Commission from ordering retail wheeling directly to an ultimate consumer. This argument is fundamentally wrongheaded.

Section 212(h) and Section 201 place separate and independent limits on FERC's jurisdiction. Neither this Court nor the Commission has ever held that compliance with Section 212(h) automatically ensures compliance with Section 201's prohibition on FERC jurisdiction over unbundled retail distribution. What FERC really seems to be arguing, though, is that a state somehow cedes its jurisdiction over unbundled retail distribution if it unbundles retail service or if a public utility voluntarily provides it. This proposition finds no support in law. Indeed, Order 888 expressly rejected this argument, holding that even where a state orders unbundled retail wheeling, the state retains jurisdiction over local distribution. Order 888 at 31,771, 31,781–83; *see also TAPSG*, 225 F.3d at 695. Accordingly, we reject FERC's attempt to evade the

jurisdictional strictures of Section 201 by invoking the separate jurisdictional limitation found in Section 212(h).

### III.   Conclusion

When reviewing agency action, we are charged to "hold unlawful and set aside" any action found to be "in excess of statutory jurisdiction."  5 U.S.C. 706(2)(C) (2000).  By accepting Midwest's tariff filing and asserting jurisdiction over unbundled retail distribution service, FERC exceeded its statutory jurisdiction under FPA § 201(b)(1).  Accordingly, we grant the petition and vacate the orders under review.

*So ordered.*