Justice Stevens
delivered the opinion of the Court.
The Taft-Hartley Act, enacted in 1947, increased the size of the National Labor Relations Board (Board) from three members to five. See 29 U. S. C. § 153(a). Concurrent with that change, the Taft-Hartley Act amended § 3(b) of the National Labor Relations Act (NLRA) to increase the quorum requirement for the Board from two members to three, and to allow the Board to delegate its authority to groups of at least three members. See § 153(b). The question in this case is whether, following a delegation of the Board’s powers to a three-member group, two members may continue to exercise that delegated authority once the group’s (and the. Board’s) membership falls to two. We hold that two remaining Board members cannot exercise such authority.
I
As 2007 came to a close, the Board found itself with four members and one vacancy. It anticipated two more vacancies at the end of the year, when the recess appointments of Members Kirsanow and Walsh were set to expire, which would leave the Board with only two members — too few to meet the Board’s quorum requirement, § 153(b). The four sitting members decided to take action in an effort to preserve the Board’s authority to function. On December 20, 2007, the Board made two delegations of its authority, effec *677 tive as of midnight December 28,2007. First, the Board delegated to the general counsel continuing authority to initiate and conduct litigation that would normally require case-by-case approval of the Board. See Minute of Board Action (Dec. 20, 2007), App. to Brief for Petitioner 4a-5a (hereinafter Board Minutes). Second, the Board delegated “to Members Liebman, Schaumber and Kirsanow, as a three-member group, all of the Board’s powers, in anticipation of the adjournment of the 1st Session of the 110th Congress.” Id., at 5a. The Board expressed the opinion that its action would permit the remaining two members to exercise the powers of the Board “after [the] departure of Members Kir-sanow and Walsh, because the remaining Members will constitute a quorum of the three-member group.” Ibid.
The Board’s minutes explain that it relied on “the statutory language” of § 3(b), as well as an opinion issued by the Office of Legal Counsel (OLC), for the proposition that the Board may use this delegation procedure to “issue decisions during periods when three or more of the five seats on the Board are vacant.” Id., at 5a, 6a. The OLC had concluded in 2003 that “if the Board delegated all of its powers to a group of three members, that group could continue to issue decisions and orders as long as a quorum of two members remained.” Dept, of Justice, OLC, Quorum Requirements, App. to Brief for Respondent 3a. In seeking the OLC’s advice, the Board agreed to accept the OLC’s answer regarding its ability to operate with only two members, id., at la, n. 1, and the Board in its minutes therefore “acknowledged that it is bound” by the OLC opinion, Board Minutes 6a. The Board noted, however, that it was not bound to make this delegation; rather, it had “decided to exercise its discretion” to do so. Ibid.
On December 28, 2007, the Board’s delegation to the three-member group of Members Liebman, Schaumber, and Kirsanow became effective. On December 31,2007, Member Kirsanow’s recess appointment expired. Thus, starting on *678 January 1, 2008, Members Liebman and Schaumber became the only members of the Board. They proceeded to issue decisions for the Board as a two-member quorum of a three-, member group. The delegation automatically terminated on March 27, 2010, when the President made two recess appointments to the Board, because the terms of the delegation specified that it would be revoked when the Board’s membership returned to at least three members, id., at 7a.
During the 27-month period in which the Board had only two members, it decided almost 600 cases. See Letter from Elena Kagan, Solicitor General, to William K. Suter, Clerk of Court (Apr. 26, 2010). One of those cases involved petitioner New Process Steel. In September 2008, the two-member Board issued decisions sustaining two unfair labor practice complaints against petitioner. See New Process Steel, LP, 353 N. L. R. B. No. 25; New Process Steel, LP, 353 N. L. R. B. No. 13. Petitioner sought review of both orders in the Court of Appeals for the Seventh Circuit, and challenged the authority of the two-member Board to issue the orders. •
The court ruled in favor of the Government. After a review of the text and legislative history of § 3(b) and the sequence of events surrounding the delegation of authority in December 2007, the court concluded that the then-sitting two members constituted a valid quorum of a three-member group to which the Board had legitimately delegated all its powers. 564 F. 3d 840, 845-847 (CA7 2009). On the same day that the Seventh Circuit issued its decision in this case, the Court of Appeals for the District of Columbia Circuit announced a decision coming to the opposite conclusion. Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB, 564 F. 3d 469 (2009). We granted certiorari to resolve the conflict.[1] 558 U. S. 989 (2009).
*679 II
The Board’s quorum requirements and delegation procedure are set forth in § 3(b) of the NLRA, 49 Stat. 451, as amended by 61 Stat. 139, which provides:
“The Board is authorized to delegate to any group of three or more members any or all of the powers which it may itself exercise.... A vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board, and three members of the Board shall, at all times, constitute a quorum of the Board, except that two members shall constitute a quorum of any group designated pursuant to the first sentence hereof.” 29 U. S. C. § 153(b).
It is undisputed that the first sentence of this provision authorized the Board to delegate its powers to the three-member group effective on December 28, 2007, and the last sentence authorized two members of that group to act as a quorum of the group during the next three days if, for example, the third member had to recuse himself from a particular matter. The question we face is whether those two members could continue to act for the Board as a quorum of the delegee group after December 31, 2007, when the Board’s membership fell to two and the designated three-member group of “Members Liebman, Sehaumber, and Kirsanow” ceased to exist due to the expiration of Member Kirsanow’s term. Construing §3(b) as a whole and in light of the Board’s longstanding practice, we are persuaded that they could not.
The first sentence of § 3(b), which we will call the delegation clause, provides that the Board may delegate its powers only to a “group of three or more members.” 61 Stat. 139. There are two different ways to interpret that language. *680 One interpretation, put forward by the Government, would read the clause to require only that a delegee group contain three members at the precise time the Board delegates its powers, and to have no continuing relevance after the moment of the initial delegation. Under that reading, two members alone may exercise the Ml power of the Board so long as they were part of a delegee group that, at the time of its creation, included three members. The other interpretation, by contrast, would read the clause as requiring that the delegee group maintain a membership of three in order for the delegation to remain valid. Three main reasons support the latter reading.
First, and most fundamentally, reading the delegation clause to require that the Board’s delegated power be vested continuously in a group of three members is the only way to harmonize and give meaningful effect to all of the provisions in § 3(b). See Duncan v. Walker, 533 U. S. 167, 174 (2001) (declining to adopt a “construction of the statute, [that] would render [a term] insignificant”); Market Co. v. Hoffman, 101 U. S. 112, 115-116 (1879) (“[A] statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be ... insignificant” (internal quotation marks omitted)). Those provisions are: (1) the delegation clause; (2) the vacancy clause, which provides that “[a] vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board”; (3) the Board quorum requirement, which mandates that “three members of the Board shall, at all times, constitute a quorum of the Board”; and (4) the group quorum provision, which provides that “two members shall constitute a quorum” of any delegee group. See § 153(b).
Interpreting the statute to require the Board’s powers to be vested at all times in a group of at least three members is consonant with the Board quorum requirement, which requires three participating members “at all times” for the Board to act. The interpretation likewise gives material ef- *681 feet to the three-member requirement in the delegation clause. The vacancy clause still operates to provide that vacancies do not impair the ability of the Board to take action, so long as the quorum is satisfied. And the interpretation does not render inoperative the group quorum provision, which still operates to authorize a three-member delegee group to issue a decision with only two members participating, so long as the delegee group was properly constituted. Reading §3(b) in this manner, the statute’s various pieces hang together — a critical clue that this reading is a sound one.
The contrary reading, on the other hand, allows two members to act as the Board ad infinitum, which dramatically undercuts the significance of the Board quorum requirement by allowing its permanent circumvention. That reading also makes the three-member requirement in the delegation clause of vanishing significance, because it allows a de facto delegation to a two-member group, as happened in this case. Under the Government’s approach, it would satisfy the statute for the Board to include a third member in the group for only one minute before her term expires; the approach gives no meaningful effect to the command implicit in both the delegation clause and the Board quorum requirement that the Board’s full power be vested in no fewer than three members. Hence, while the Government’s reading of the delegation clause is textually permissible in a narrow sense, it is structurally implausible, as it would render two of §3(b)’s provisions functionally void.
Second, and relatedly, if Congress had intended to authorize two members alone to act for the Board on an ongoing basis, it could have said so in straightforward language. Congress instead imposed the requirement that the Board delegate authority to no fewer than three members, and that it have three participating members to constitute a quorum. Those provisions are at best an unlikely way of conveying congressional approval of a two-member Board. Indeed, *682 had Congress wanted to provide for two members alone to act as the Board, it could have maintained the NLRA’s original two-member Board quorum provision, see 29 U. S. C. § 153(b) (1946 ed.), or provided for a delegation of the Board’s authority to groups of two. The Rube Goldberg-style delegation mechanism employed by the Board in 2007 — delegating to a group of three, allowing a term to expire, and then continuing with a two-member quorum of a phantom delegee group — is surely a bizarre way for the Board to achieve the authority to decide cases with only two members. To conclude that Congress intended to authorize such a procedure to contravene the three-member Board quorum, we would need some evidence of that intent.
The Government has not adduced any convincing evidence on this front, and to the contrary, our interpretation is consistent with the longstanding practice of the Board. This is the third factor driving our decision. Although the Board has throughout its history allowed two members of a three-member group to issue decisions when one member of a group was disqualified from a case, see Brief for Respondent 20; Board Minutes 6a, the Board has not (until recently) allowed two members to act as a quorum of a defunct three-member group.[2] Instead, the Board concedes that its practice was to reconstitute a delegee group when one group member’s term expired. Brief for Respondent 39, n. 27.[3] *683 That our interpretation of the delegation provision is consistent with the Board’s longstanding practice is persuasive evidence that it is the correct one, notwithstanding the Board’s more recent view. See Bowen v. Georgetown Univ. Hospital, 488 U. S. 204, 214 (1988).
In sum, a straightforward understanding of the text, which requires that no fewer than three members be vested with the Board’s full authority, coupled with the Board’s longstanding practice, points us toward an interpretation of the delegation clause that requires a delegee group to maintain a membership of three.
Ill
Against these points, the Government makes several arguments that we find unconvincing. It first argues that § 3(b) authorizes the Board’s action by its plain terms, notwithstanding the somewhat fictional nature of the delegation to a three-member group with the expectation that within days it would become a two-member group. In particular, the Government contends the group quorum requirement and the vacancy clause together make clear that when the Board has delegated its power to a three-member group, “any two members of that group constitute a quorum that may continue to exercise the delegated powers, regardless whether the third group member . . . continues to sit on the Board” and regardless “whether a quorum remains in the full Board.” Brief for Respondent 17; see also id., at 20-23.
Although the group quorum provision clearly authorizes two members to act as a quorum of a “group designated pursuant to the first sentence” — i. e., a group of at least three members — it does not, by its plain terms, authorize two members to constitute a valid delegee group. A quorum is the number of members of a larger body that must partiei- *684 pate for the valid transaction of business. See Black’s Law Dictionary 1370 (9th ed. 2009) (defining “quorum” as the “minimum number of members . . . who must be present for a deliberative assembly to legally transact business”); 13 Oxford English Dictionary 51 (2d ed. 1989) (“A fixed number of members of any body ... whose presence is necessary for the proper or valid transaction of business”); Webster’s New International Dictionary 2046 (2d ed. 1954) (“Such a number of the officers or members of any body as is, when duly assembled, legally competent to transact business”). But the fact that there are sufficient members participating to constitute a quorum does not necessarily establish that the larger body is properly constituted or can validly exercise authority.[4] In other words, that only two members must participate to transact business in the name of the group does not establish that the group itself can exercise the Board’s authority when the group’s membership falls below three.
*685 The Government nonetheless contends that quorum rules “ordinarily” define the number of members that is both necessary and sufficient for an entity to take an action. Brief for Respondent 20. Therefore, because of the quorum provision, if “at least two members of a delegee group actually participate in a decision . . . that should be the end of the matter,” regardless of vacancies in the group or on the Board. Ibid. But even if quorum provisions ordinarily provide the rule for dealing with vacancies — i. e., even if they ordinarily make irrelevant any vacancies in the remainder of the larger body — the quorum provisions in §3(b) do no such thing. Rather, there is a separate clause addressing vacancies. The vacancy clause, recall, provides that “[a] vacancy in the Board shall not impair the right of the remaining members to exercise all of the powers of the Board.” § 153(b) (2006 ed.). We thus understand the quorum provisions merely to define the number of members who must participate in a decision, and look to the vacancy clause to determine whether vacancies in excess of that number have any effect on an entity’s authority to act.
The Government argues that the vacancy clause establishes that a vacancy in the group has no effect. But the clause speaks to the effect of a vacancy in the Board on the authority to exercise the powers of the Board; it does not provide a delegee group authority to act when there is a vacancy in the group. It is true that any vacancy in the group is necessarily also a vacancy in the Board (although the converse is not true), and that a group exercises the (delegated) “powers of the Board.” But §3(b) explicitly distinguishes between a group and the Board throughout, and in light of that distinction we do not think “Board” should be read to include “group” when doing so would negate for all practical purposes the command that a delegation must be made to a group of at least three members.
Some courts have nonetheless interpreted the quorum and vacancy provisions of §3(b) by analogizing to an appellate *686 panel, which may decide a case even though only two of the three initially assigned judges remain on the panel. See Photo-Sonics, Inc. v. NLRB, 678 F. 2d 121, 122-123 (CA9 1982). The governing statute provides that a case may be decided “by separate panels, each consisting of three judges,” 28 U. S. C. § 46(b), but that a “majority of the number of judges authorized to constitute a court or panel thereof . . . shall constitute a quorum,” § 46(d). We have interpreted that statute to “requir[e] the inclusion of at least three judges in the first instance,” but to allow a two-judge “quorum to proceed to judgment when one member of the panel dies or is disqualified.” Nguyen v. United States, 539 U. S. 69, 82 (2003). But §46, which addresses the assignment of particular cases to panels, is a world apart from this statute, which authorizes the standing delegation of all the Board’s powers to a small group.[5] Given the difference between a panel constituted to decide particular cases and the creation of a standing panel plenipotentiary, which will decide many cases arising long after the third member departs, there is no basis for reading the statutes similarly. Moreover, our reading of the court of appeals quorum provision was informed by the longstanding practice of allowing two judges from the initial panel to proceed to judgment in the case of a vacancy, see ibid., and as we have already explained, the Board’s practice has been precisely the opposite.
Finally, we are not persuaded by the Government’s argument that we should read the statute to authorize the Board to act with only two members in order to advance the congressional objective of Board efficiency. Brief for Respond *687 ent 26. In the Government’s view, Congress’ establishment of the two-member quorum for a delegee group reflected its comfort with pre-Taft-Hartley practice, when the then-three-member Board regularly issued decisions with only two members. Id., at 24. But it is unsurprising that two members regularly issued Board decisions prior to Taft-Hartley, because the statute then provided for a Board quorum of two. See 29 U. S. C. § 153(b) (1946 ed.). Congress changed that requirement to a three-member quorum for the Board. As we noted above, if Congress had wanted to allow the Board to continue to operate with only two members, it could have kept the Board quorum requirement at two.[6]
Furthermore, if Congress had intended to allow for a two-member Board, it is hard to imagine why it would have limited the Board’s power to delegate its authority by requiring a delegee group of at least three members. Nor do we have any reason to surmise that Congress’ overriding objective in amending § 3(b) was to keep the Board operating at all costs; the inclusion of the three-member quorum and delegation provisions indicate otherwise. Cf. Robert’s Rules of Order § 3, p. 20 (10th ed. 2001) (“The requirement of a quorum is a protection against totally unrepresentative action in the name of the body by an unduly small number of persons”).
IV
In sum, we find that the Board quorum requirement and the three-member delegation clause should not be read as easily surmounted technical obstacles of little to no import. *688 Our reading of the statute gives effect to those provisions without rendering any other provision of the statute superfluous: The delegation clause still operates to allow the Board to act in panels of three, and the group quorum provision still operates to allow any panel to issue a decision by only two members if one member is disqualified. Our construction is also consistent with the Board’s longstanding practice with respect to delegee groups. We thus hold that the delegation clause requires that a delegee group maintain a membership of three in order to exercise the delegated authority of the Board.
We are not insensitive to the Board’s understandable desire to keep its doors open despite vacancies.[7] Nor are we unaware of the costs that delay imposes on the litigants. If Congress wishes to allow the Board to decide cases with only two members, it can easily do so. But until it does, Congress’ decision to require that the Board’s full power be delegated to no fewer than three members, and to provide for a Board quorum of three, must be given practical effect rather than swept aside in the face of admittedly difficult circumstances. Section 3(b), as it currently exists, does not authorize the Board to create a tail that would not only wag the dog, but would continue to wag after the dog died.
The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

It is so ordered.

 Several other Courts of Appeals reached the same conclusion as the Seventh Circuit, although not always following the same reasoning. See Northeastern Land Servs., Ltd. v. NLRB, 560 F. 3d 36, 41 (CA1 2009); *679 Snell Island SNF LLC v. NLRB, 568 F. 3d 410, 424 (CA2 2009); Narricot Industries, L. R. v. NLRB, 587 F. 8d 654, 660 (CA4 2009); Teamsters Local Union No. 523 v. NLRB, 590 F. 3d 849, 852 (CA10 2009).

 When one member of a group is disqualified, only two members actually participate in the decision. That circumstance thus also presents the problem of the possible inferiority of two-member decisionmaking. That the Board found it necessary to reconstitute groups only when there was a vacancy, and not when there was a disqualification, suggests that its practice was driven by more than its belief in the “superiority of three-member groups,” post, at 697 (Kennedy, J., dissenting).

 It also has not been the Board’s practice to issue decisions when the Board’s membership has fallen to two. For about a 2-month period in 1993-1994, and a 1-month period in 2001-2002, the Board had only two members and did not issue decisions. Brief for Respondent 5, n. 4. In 2005, the Board did delegate its authority to a three-member group, of *683 which two members issued a few orders as a quorum during a 3-day period in which the Board’s (and the group’s) membership fell below three. Ibid. But the two-member Board at issue in this case, extending over two years, is unprecedented in the history of the post-Taft-Hartley Board.

 Nor does failure to meet a quorum requirement necessarily establish that an entity’s power is suspended so that it can be exercised by no delegee. The requisite membership of an organization, and the number of members who must participate for it to take an action, are two separate (albeit related) characteristics. Thus, although we reach the same result, we do not adopt the District of Columbia Circuit’s equation of a quorum requirement with a membership requirement that must be satisfied or else the power of any entity to which the Board has delegated authority is suspended. See Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB, 564 F. 3d 469, 475 (2009) C‘[T]he Board quorum provision establishes that the power of the Board to act exists [only] when the Board consists of three members. The delegee group’s delegated power to act. . . ceases when the Board’s membership dips below the Board quorum of three members” (citation omitted)). The Board may not, of course, itself take any action absent sufficient membership to muster a quorum (three), and in that sense a quorum requirement establishes a minimum membership level. Our conclusion that the delegee group ceases to exist once there are no longer three Board members to constitute the group does not cast doubt on the prior delegations of authority to nongroup members, such as the regional directors or the general counsel. The latter implicates a separate question that our decision does not address.

 In any event, if the analogy to the appellate courts were correct, then one might have to examine each Board decision individually. Petitioner’s case was not initially assigned to a three-member panel and thereafter decided by two members after one member had retired. Instead, by the time petitioner’s case came before the Board, Member Kirsanow had long departed. In practical terms, petitioner’s case was both assigned to and decided by a two-member delegee group.

 We have no doubt that Congress intended “to preserve the ability of two members of the Board to exercise the Board’s full powers, in limited circumstances,” post, at 699, as when a two-member quorum of a properly constituted delegee group issues a decision for the Board in a particular case. But we doubt “Congress intended to preserve” the pre-TaftHartley practice of two members acting for the Board when the third seat was vacant, ibid., because it declined to preserve the pre-Taft-Hartley two-member Board quorum.

 Former Board members have identified turnover and vacancies as a significant impediment to the operations of the Board. See Truesdale, Battling Case Backlogs at the NLRB, 16 Lab. Law. 1,5 (2000) (“[I]t is clear that turnover and vacancies have a major impact on Board productivity”); Higgins, Labor Czars — Commissars—Keeping Women in the Kitchen— the Purpose and Effects of the Administrative Changes Made by TaftHartley, 47 Cath. U. L. Rev. 941, 953 (1998) (“Taft-HarÜey's Achilles heel is the appointment process____In the past twenty years... Board member turnover and delays in appointments and in the confirmation process have kept the Board from reaching its true potential”).