**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

Nos. 10-3596/3689

———————————

NATIONAL LABOR RELATIONS BOARD,

                    Petitioner/Cross-Respondent
                    in 10-3596

                    v.

COMMUNITY MEDICAL CENTER, INC.,

                     Respondent/Cross-Petitioner
                     in 10-3689

———————————————————

On Application for Enforcement of a
Decision and Order of the
National Labor Relations Board
(Agency Nos. 4CA-34888; 4-CA-35025; 4-RC-21199)

———————————————————

Submitted under Third Circuit LAR 34.1(a)
on March 18, 2011

Before:  BARRY, CHAGARES and ROTH, <u>Circuit Judges</u>

(Opinion filed: August 3, 2011)

---

O P I N I O N

---

**ROTH**, <u>Circuit Judge</u>:

## I. **Introduction**

Community Medical Center, Inc. (CMC) petitions for review of the National Labor Relations Board's (Board) decision finding that CMC engaged in unfair labor practices that interfered with a union election process, setting aside the election results, and ordering a new election. CMC contends that the Board misinterpreted its shared governance initiative as an attempt to dissuade nurses from unionizing and erred in requiring CMC to make its parking garage available to union organizers. The Board has cross-petitioned for enforcement of its decision.

## II. **Background**[1]

CMC is a nonprofit that operates a 600-bed acute care hospital and related facilities in Toms River, New Jersey, and employs more than 800 registered nurses. In March 2006, the New York State Nurses Association (NYSNA or the union), started a campaign to organize nurses at CMC, which concluded with an election in January 2007. The campaign was run by an organizing committee that included several paid union organizers as well as CMC nurses. CMC opposed the organizing campaign and hired an outside consultant to assist with the opposition to the union's campaign. Additionally, in

---

[1] Because we write only for the parties, we assume familiarity with the facts of this case, which are set out in detail in the decision of the Board, and only briefly summarize them here. *See Cmty. Med. Ctr. & N.Y. State Nurses Ass'n*, 354 NLRB No. 26, 2009 WL 1569250 (2009).

July 2006, CMC offered jobs to two of NYSNA's paid organizers working on the campaign at CMC: Keith Peraino and Susan Rosen. After being hired by CMC, Rosen and Peraino were involved in CMC's opposition to the organizing campaign.

This case arises from two incidents during NYSNA's 2006-2007 organizing campaign. First, CMC initiated a shared governance program during the campaign. Shared governance is an approach to management that emphasizes "shared decision-making based on the principles of partnership, equity, accountability, and ownership at the point of service." According to a CMC nurse manager, shared governance would increase the role of nurses in administrative decisions and enable them to do some self-scheduling. CMC began working on shared governance in August 2006 and formally presented it to its nurses in a meeting on October 18, 2006. In July 2006, while he was still working for NYSNA, Peraino told the union organizing committee that the shared governance program was the only strategy that CMC could use to counter the union's organizing campaign because it would provide nurses with more input into their working conditions and a way of organizing without a union. After switching sides, both Rosen and Peraino actively promoted shared governance to CMC nurses and opposed the organizing campaign by meeting with nurses, preparing handouts and literature opposing unionization, and training CMC's management. Rosen, Peraino and other CMC managers also approached two nurses supporting the union's organizing campaign and offered them positions on the new, shared governance committee.

CMC contends that its emphasis on shared governance was not an entirely new development. In order to obtain a prestigious "magnet" designation in 2003, CMC

3

implemented the "Councilor" program, which created four councils, including nurses, to discuss CMC policies and, to a lesser extent, working conditions.[2] CMC presented a treatise on shared governance that recognized that the Councilor program was a form of shared governance. CMC further explained that it combined two of its nursing councils in September 2006 to form a single, Nursing Practice Council in order to implement shared governance principles. According to CMC, shared governance programs were necessary to obtain the magnet designation in 2003, and its shared governance initiative in 2006 was simply a refinement of the Councilor model designed to ensure that CMC would be re-designated as a magnet center in 2007. NYSNA and the NLRB point out that the magnet program does not require implementation of shared governance and that this term was not used in connection with CMC's initial application for magnet status in 2002-2003.

The second incident concerns CMC's decision to prevent union organizers from parking in its parking garage for two days during the union's organizing campaign. In the months following the start of the campaign in March 2006, the organizers had parked in the garage on numerous occasions without incident. However, on August 30 and 31, 2006 – the day that the union filed its election petition and the following day – two union organizers were identified by CMC management and then, in the presence of CMC

---

[2] The magnet designation is issued by the American Nurses Credentialing Center (ANCC). The designation indicates that the hospital provides high-quality nursing care and lasts for four years, at which point CMC must apply to renew the designation. (J.A. 4, 121, 143, 337-40.)

4

nurses, approached by CMC security guards and directed to remove their cars from the garage.

NYSNA filed an election petition on August 30, 2006. In September and November of 2006, the union filed complaints with the NLRB alleging unfair labor practices by CMC. The election was held on January 11, 2007, and the union lost by a vote of 316 to 407. An Administrative Law Judge (ALJ) for the NLRB held a hearing on the union's complaints and found that CMC promoted and implemented shared governance "with the express purpose of attempting to persuade and discourage the nurses from selecting the Union as their collective-bargaining representative," and that CMC improperly prevented union organizers from parking in its parking garage. The ALJ concluded that these were unfair labor practices which "interfere[d] with the exercise of a free and untrammeled choice in an election," and therefore set aside the results of the union election, ordered a new election, and ordered CMC to cease and desist from the unfair labor practices. CMC appealed the decision to the Board, which adopted, with slight modifications, the ALJ's findings on shared governance and access to the parking garage and affirmed its order of a new election.[3] The Board petitioned this Court for enforcement of its order and CMC petitioned for review of the Board's decision.

---

[3] The Board initially remanded the case to the ALJ so that he could make more detailed findings regarding shared governance. The Board's decision was initially made by only two members of the Board, but was reaffirmed by three members after the Supreme Court's decision in *New Process Steel, L.P. v. NLRB*, 130 S. Ct. 2635 (2010).

## III. Jurisdiction

We have jurisdiction to review the Board's finding of unfair labor practices pursuant to 29 U.S.C. § 160(e)-(f). However, we do not have jurisdiction to review the Board's order of a new election, because that order is not final until the new election is complete. *See Indiana Hosp., Inc. v. NLRB,* 10 F.3d 151, 154 & n.1 (3d Cir. 1993); *Graham Architectural Products Corp. v. NLRB*, 697 F.2d 534, 543 (3d Cir. 1983). Accordingly, we lack jurisdiction to consider CMC's argument that its preventing of NYSNA's organizers from parking in its garage for only two days only minimally affected the union's organizing campaign and does not justify the Board's order of a new election.[4] We therefore dismiss without prejudice that portion of CMC's petition seeking *vacatur* of the Board's order of a new election. *See Graham Architectural Products Corp.*, 697 F.2d at 543.

## IV. Discussion

The National Labor Relations Act (the Act) guarantees employees the "right to self-organization, to form, join, or assist labor organizations," 29 U.S.C. § 157, and makes it a prohibited "unfair labor practice" for an employer "to interfere with, restrain, or coerce employees in the exercise of" these rights. *Id.* § 158(a)(1). The Act empowers the NLRB to determine whether an employer has engaged in an unfair labor practice and

---

[4] CMC also argues that preventing the union organizers from parking in its garage was not an unfair labor practice because under *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 534 (1992), it had the right to exclude union organizers from its property. We do not consider this argument because there is no evidence in the record that CMC raised this argument before the Board (J.A. 27, 48). *See* 29 U.S.C. § 160(e); 29 C.F.R. § 102.46(b)(1)(i), (iv). CMC does not otherwise contest the Board's conclusion that excluding the organizers from its parking garage was an unfair labor practice.

to impose appropriate remedies. *Id.* § 160. We review the Board's legal conclusions *de novo* and its findings of fact to determine if they are supported by substantial evidence. *NLRB v. Prime Energy Ltd. P'ship*, 224 F.3d 206, 208 (3d Cir. 2000). Because the Board has partially adopted the findings of the ALJ, we review the decisions of both the Board and the ALJ. *Trafford Distrib. Ctr. v. NLRB*, 478 F.3d 172, 179 (3d Cir. 2007).

CMC does not dispute that promising to improve employment conditions in order to influence employees' vote in a union election is an unfair labor practice under section 8(a)(1) of the Act. *See United Dairy Farmers Coop. Ass'n v. NLRB*, 633 F.2d 1054, 1062 (3d Cir. 1980). Instead, CMC argues that the ALJ incorrectly found that the purpose of the shared governance program was to influence the election by offering improved working conditions, rather than to ensure that CMC retained its magnet status. We disagree. Substantial evidence supports the ALJ's conclusion that CMC promoted the shared governance program for the improper purpose of influencing the union election.[5] The ALJ therefore reasonably declined to credit CMC's alternative explanation for its shared governance program and gave greater weight to the considerable evidence of improper motive. We will not disturb the ALJ's reasonable credibility determinations and weighing of the evidence. *See Citizens Publ'g and Printing Co. v. NLRB*, 263 F.3d

---

[5] Peraino identified shared governance as the primary obstacle to unionization and then, upon switching sides and helping CMC oppose the organizing campaign, both he and Rosen became leading proponents of shared governance. CMC also approached the leading nurses supporting the union and offered them positions on its Nursing Practice Council, which was designed to promote shared governance. CMC's promotion of shared governance shortly after the filing of the union election petition also suggests that it was in response to NYSNA's organizing campaign.

224, 232 (3d Cir. 2001); *ABC Trans-National Transp., Inc. v. NLRB*, 642 F.2d 675, 685-86 (3d Cir. 1981).

## V.  Conclusion

For these reasons, we will deny the Community Medical Center's petition for review except for the portion of the petition seeking *vacatur* of the order of a new election, which is dismissed.  We will grant the Board's petition for enforcement.