**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 10-4334, 10-4465
_____

NATIONAL LABOR RELATIONS BOARD,
                                        Petitioner,

v.

J.S. CARAMBOLA, LLP,
d/b/a CARAMBOLA BEACH RESORT,
                                        Respondent.

_____

J.S. CARAMBOLA, LLP,
d/b/a CARAMBOLA BEACH RESORT
                                        Petitioner,

v.

NATIONAL LABOR RELATIONS BOARD,
                                        Respondent.
_____

On Application for Enforcement of an Order of the
National Labor Relations Board &
Cross-Petition for Review
(NLRB 24-CA-10951)
_____

Submitted Under Third Circuit LAR 34.1(a)
December 13, 2011

Before:  SLOVITER and VANASKIE, *Circuit Judges*
and STENGEL,* *District Judge*

(Filed: January 12, 2012)

*Honorable Lawrence F. Stengel, District Court Judge for the Eastern District of Pennsylvania, sitting by designation.

_____

OPINION OF THE COURT
_____

STENGEL, *District Judge.*

The National Labor Relations Board (the "Board") applies to enforce, and J.S. Carambola, LLP ("the Company") cross-petitions this Court to review, an Order of the Board entered on November 10, 2010, against the Company. For the reasons that follow, we will enforce the Board's Order and deny the Company's cross-petition for review.

I.

J.S. Carambola, LLP ("the Company") operates a hotel and resort in St. Croix, Virgin Islands.[1] On September 20, 2007, Our Virgin Islands Labor Union ("the Union") filed a representation petition with the Board seeking to represent a unit of the Company's employees at its St. Croix facility. On October 5, the Board conducted a secret-ballot election among the designated employees that resulted in a vote in favor of certification.

The Company objected to the election because it claimed the Union had prounion supervisors campaign on behalf of the Union, solicit the signing of authorization cards, instruct employees to attend union meetings, and threaten or coerce employees. After reviewing the Company's evidence in support of its objections and holding a hearing on the matter, the Board issued a Report and Recommendation that recommended overruling

_____

[1]Because we write only for the parties, we assume familiarity with the facts, procedural history, and record of this case and only briefly summarize here.

2

the objections and certifying the union. The hearing officer found that kitchen employee Lauritz Thompson allegedly told employees "If you don't vote for the Union you are a stupid ass." The hearing officer found that Mr. Thompson was not a statutory supervisor, and that even if he was, he did not engage in objectionable conduct that would warrant overturning the election.

The Company filed exceptions to the hearing officer's recommendation. Thereafter, on May 28, 2008, the two remaining Board members issued a Decision and Certification of Representative in which it adopted the hearing officer's recommendations and certified the Union. Subsequently, the Board's General Counsel issued a complaint based upon the Union's unfair labor practice charge that the Company refused to bargain with the Union. The Company admitted its refusal to bargain after receiving a request to bargain from the Union, but disputed the validity of the Union's certification as the employees' bargaining representative.

The Board's General Counsel filed a motion for summary judgment, and a notice to show cause why the General Counsel's motion should not be granted in light of the Company's admission that it refused to bargain with the Union. The Company filed a response and argued that summary judgment should not be granted because the Board improperly certified the Union as the exclusive representative. On September 15, 2008, the only *two* sitting members of the Board issued a Decision and Order, granting the General Counsel's motion for summary judgment and finding that the Company's refusal to bargain with the Union violated Section 8(a)(5) and (1) of the National Labor Relations Act ("NLRA"). The Company filed a motion for reconsideration that was

3

denied by the Board on November 7, 2008. The Company then petitioned this Court to review the Board's Order, and the Board cross-applied for enforcement. (Case Nos. 08-4729, 09-1035).

On June 17, 2010, the United States Supreme Court issued its decision in *New Process Steel, L.P. v. NLRB*, 130 S.Ct. 2635 (2010) ( "*New Process Steel*"). The Court held that section 3(b) of the NLRA "requires that a delegee group maintain a membership of *three* in order to exercise the delegated authority of the Board." *Id.* at 2644 (emphasis added). Because the Board's order in this case had been entered by a *two*-member panel, the Board requested that we remand the case for further proceedings consistent with the Supreme Court's decision. We granted their request.

On August 6, 2010, the Board issued a Decision, Certification of Representative, and Notice to Show Cause. In its decision, the Board explained that the prior proceeding was a *two*-member decision and the Board would not give it "preclusive effect." The Board considered the postelection representation issues raised by the Company and again decided to adopt the hearing officer's findings and recommendations for the reasons stated in its May 28, 2008 Decision and Certification of Representative, which the Board incorporated by reference. The Board gave the Union's General Counsel leave to file an amended complaint in light of the fact that other events may have occurred during the pendency of the litigation. The Board also gave the Company an opportunity to show why the Board should not grant the General Counsel's motion for summary judgment.

On September 3, 2010, the General Counsel issued an amended complaint alleging that the Company had refused to recognize and bargain with the Union "[s]ince about

4

June 25, 2008" and its failure to do so violated Section 8(a)(5) and (1) of the NLRA. On September 7, 2010, the Union sent a letter to the Company and its counsel that renewed the Union's request for bargaining. On September 23, 2010, the Company filed its answer to the amended complaint and admitted that it received the Union's initial request to bargain, however, the Company maintained that it was not obligated to recognize and bargain with the Union pursuant to *New Process Steel*. The Company also asserted that the General Counsel's amended complaint was premature because, as of the time the Company issued its amended complaint, it had made no new demand for recognition or bargaining. On September 30, 2010, the Company also filed an opposition to the Board's motion for summary judgment asserting that the General Counsel's amended complaint and motion for summary judgment were premature because the Union had not renewed its bargaining demand prior to the filings.

On November 10, 2010, the newly constituted Board, properly consisting of *three* members, issued its Decision and Order, granting the General Counsel's motion for summary judgment. The Board found that the Union requested that the Company bargain collectively with it as the exclusive collective-bargaining representative of the unit on June 16, 2008. The Board found that since about June 25, 2008, and continuing after the Union's certification, the Company refused to bargain with the Union. Therefore, the Board found that the Company violated Section 8(a)(5) and (1) of the NLRA.

The Board's Order requires the Company to cease and desist from failing and refusing to recognize and bargain with the Union and interfering with the rights of

5

employees in the exercise of rights guaranteed by Section 7 of the NLRA.  The Order also directs the Company to recognize and bargain with the Union upon request.

## II.

The Board had jurisdiction over the case pursuant to the NLRA, 29 U.S.C. § 160(a)-(c).  We have jurisdiction over this appeal from the Board's decision pursuant to Section 10(e) of the NLRA.  29 U.S.C. § 160(e).  This Court has jurisdiction over the case under Section 10(e) and (f) of the NLRA because the Company operates a facility in St. Croix, United States Virgin Islands ("VI").

When the Board petitions for enforcement of a bargaining order, or a party challenges a Board determination that it engaged in an unfair labor practice, the Court is bound to accept the Board's factual findings "if supported by substantial evidence on the record as a whole."  29 U.S.C. § 160(e) & (f), *see Universal Camera Corp. v. NLRB*, 340 U.S. 474 (1951).  Substantial evidence is more than a mere scintilla, it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.* at 477.  The reviewing Court may set aside a Board decision when it cannot conscientiously find the evidence supporting that decision is substantial, when viewed in the light that the record in its entirety furnishes, including the body of evidence opposed to the Board's view. *Id.*

## III.

The Company first petitions this Court to determine whether the NLRB erred in finding that the Company failed to bargain with the Union because the Union did not make a request to bargain after the NLRB's post-*New Process Steel* August 6, 2010

certification of the Union and prior to the Board's September 3, 2010 filing of the Amended Complaint and motion for summary judgment. The Company contends that the Union was not properly certified prior to August 6, 2010 under *New Process Steel*, and therefore, there can be no unfair labor practice for failing to bargain with the Union at that time. The Company challenges the Board's Order that "[s]ince about June 25, 2008," the Company engaged in unfair labor practices because the Company maintains that it had no duty to bargain at that time because the Union was improperly certified.

Prior to August 6, 2010, the Union was not properly certified under *New Process Steel v. NLRB*, 130 S.Ct. 2635 (2010). The United States Supreme Court held that the NLRA "requires that a delegee group maintain a membership of three in order to exercise the delegated authority of the Board." *Id.* at 2644. Thus, we agree with the Company's argument that there can be no unfair labor practice for failing to bargain with the Union prior to the Board's certification under the statutorily authorized *three*-member Board on August 6, 2010. However, the Company's argument that the Court should overturn the Board's Order because the Union never made a bargaining demand prior to the filing of its amended complaint is unavailing.

The Company's persistence in refusing to meet and bargain with the Union demonstrates its consistent unwillingness to accept its obligation to meet and bargain in good faith with the Union employees' representatives. The Company errs in its argument because it ignores the fact that the Union made a specific bargaining demand in the letter dated September 7, 2010. Rather than acknowledging the letter contained in the joint appendix of the Company's submissions to the Court, the Company argues that the Union

7

never demanded to bargain with the Company during the period between the August 6, 2010 certification by the three-member Board and the filing of the General Counsel's amended complaint on September 3, 2010. The record unequivocally demonstrates that, on September 7, 2010, the Union's attorney requested that the Company meet with the Union's representatives to discuss how to engage in collective bargaining negotiations. The Company does not dispute the veracity of the demand letter, but it simply chooses to ignore it.

Although the Union's request for a renewed bargaining demand came after the filing of the amended complaint, the request came before the Board's Order and before the Company filed its response to the General Counsel's motion for summary judgment. Furthermore, the General Counsel's memorandum in support of its motion for summary judgment attaches and references the letter dated September 7, 2010. The Company was aware of the Union's request to engage in collective bargaining negotiations before it filed its response to the motion for summary judgment.

Though the Union's renewed bargaining demand came after the issuance of the amended complaint – but before the Board's Order – we find that this was harmless error because the Company does not maintain that it began bargaining once it received the Union's letter. The fact that the Company refused to bargain as of September 7, rather than September 2, is inconsequential because, as the Board correctly explained, "[r]egardless of the exact date on which [the Company's] admitted refusal to bargain became unlawful, the remedy is the same." *Carambola Beach Resort*, 356 NLRB No. 23 (November 10, 2010). The Company does not assert that it was prejudiced by the post-

8

complaint bargaining demand. Therefore, we agree with the Board that the Company's continuing refusal is unlawful and the timing of the bargaining was harmless error that did not prejudice the Company in the proceedings below.

Second, the Company petitions the Court to determine whether the NLRB erred in its finding that the company unlawfully failed to bargain with the Union in violation of Section 8(a)(1) and (5) of the NLRA when the Board decided to overrule the Company's election objection alleging improper prounion activity by supervisors. Underlying this claim, the company challenges an evidentiary ruling of the Hearing Officer because the ruling prevented the Company from submitting evidence of additional pre-election misconduct engaged in by Thompson, and that other individuals "upset the election's laboratory conditions" by engaging in pre-election misconduct. Respondent's Brief at 13.

These arguments are unsuccessful. The Board did not abuse its discretion by refusing to permit the Company to subpoena union phone records of the Union President. We agree with the Board that the records would only show that a phone call was made between the Union and the purported supervisor and would not allow a permissible inference that inappropriate conduct occurred. We have also reviewed the Company's contention that the Hearing Officer precluded the Company's counsel from asking "*any* questions" about the steps taken to comply with a subpoena. Respondent's Brief at 32. A review of the hearing transcript, referenced in the joint appendix, shows that the Company was permitted to ask questions concerning the subpoena, but not ask irrelevant

9

questions. We find that the Hearing Officer did not abuse his discretion in making his evidentiary ruling.

Third, the Company contends that the NLRB erred in refusing to conclude that Lauritz Thompson was a statutory supervisor and engaged in objectionable conduct. Absent mitigating circumstances, solicitation of an authorization card by a supervisor can have an inherent tendency to interfere with the employee's freedom to choose to sign the card or not. *Harborside Healthcare, Inc.*, 343 NLRB 906, 911 (2004). The Board in *Harborside* issued a multidimensional test to determine whether prounion supervisory conduct upsets the requisite laboratory conditions for a fair election. The first *Harborside* prong requires the Board to determine "[w]hether the supervisor's prounion conduct reasonably tended to coerce or interfere with the employees' exercise of free choice in the election." *Id.* at 909. In conducting that inquiry, the Board must consider "the nature and degree of supervisory authority possessed by those who engage in the prounion conduct; and (b) . . . the nature, extent, and context of the conduct in question." *Id.* We need not decide whether Thompson was a supervisory employee because the Company fails to meet the second prong of the *Harborside* test.

Under the second *Harborside* prong, the Board considers "[w]hether the conduct interfered with freedom of choice to the extent that it materially affected the outcome of the election." *Id.* In determining that factor, the Board should consider "(a) the margin of victory in the election; (b) whether the conduct at issue was widespread or isolated; (c) the timing of the conduct; (d) the extent to which the conduct became known; and (e) the lingering effect of the conduct." *Id.* Here, the Company claimed that Lauritz Thompson,

10

a kitchen supervisor, told employees: "If you don't vote for the Union, you are a stupid ass." We agree with the Board's determination that Thompson's statement was not objectionable because it could not have reasonably interfered with employee free choice in the election. A strong opinion in support of, or against, a union, even an offensive one, does not by itself constitute coercive conduct that warrants overturning an election. *See e.g.*, *Werthan Packaging, Inc.*, 345 NLRB 343, 343-44 (2005) (finding that supervisor's statement to union stating that it was in her and "her family's best interest to vote 'no,'" was not coercive).

We agree with the Board that Thompson's statement is not a threatening statement of physical harm or job loss that warrants overturning an election. Furthermore, neither of the two people who allegedly heard the statement heard it directly from Thompson. The hearing officer found that Thompson "testified in a candid and honest manner," and "consistently," "even though he was called to testify twice under subpoena by both parties." Furthermore, the hearing officer found that his testimony was corroborated by several witnesses whom he deemed credible. The Company has not shown a basis to reverse these credibility findings. We find that the Board's factual findings are supported by substantial evidence and the Company has not met its burden.

IV.

For the reasons set forth above, we will enforce the Board's November 10, 2010 Order and deny the cross-petition for review.