SILBERMAN, Senior Circuit Judge,
dissenting:
The merits of this case are not particularly important. I doubt whether we will see many situations in which an NLRB regional director certified an election during a period in which the NLRB lost its quorum, and that certification is subsequently challenged in an unfair labor practice proceeding. But, the case is nevertheless of great significance because the most important characteristic of a collegial appellate court is careful attention, respect, and adherence to precedent. I am afraid the majority opinion is a glaring example of a contrary approach.
I have previously authored an opinion in which I was faced with conflicting lines of authority because of my colleagues’ failure to follow prior precedent, see Vietnam Veterans of America v. Shinseki, 599 F.3d 654 (D.C.Cir.2010) (Silberman, J.), which I regarded then, and do now, as most unfortunate. Of course, every case with which we are presented has some factual difference, but not every case is legally distinguishable from every other. In deciding whether a new case is covered by previous precedent, it is the logic of the previous case’s holding that is determinative. Petitioner’s brief elegantly argued, succinctly, that we were bound by our prior decision in Laurel Baye Healthcare of Lake Lanier, Inc. v. NLRB, 564 F.3d 469 (D.C.Cir.2009). I think petitioner is exactly correct and that should be the end of the matter.
I.
The majority concludes that section 3(b) of the National Labor Relations Act, authorizing the Board to delegate to regional directors — civil servants, not political appointees — power to certify the results of an election, means that that power remains indefinitely in the regional director, even if the Board itself disappears (perhaps, because of a failure of the Senate to confirm any appointee). This power supposedly resides permanently in the regional director, even though the statute specifically provides that any interested party can appeal a regional director’s determination to the Board. And if the Board loses its quorum, or goes out of existence, that appeal right is lost.[1]
But even if a Board were to read its regulation to permit an appeal of a regional director’s decision out of time — perhaps years later when a Board regained a quorum — the majority ignores the impact of a regional director’s certification in the interim. An employer who .refuses to recognize that certification may pay a price in labor relations. And the regional director’s decision with respect to issues such as objectional conduct may deviate from Board policy.
As I discuss below, I think this construction would be a stretch, even if we were considering section 3(b) de novo, but we are not. We are bound by our prior opinion in Laurel Baye. In that case, we considered whether a Board delegation of all of its power to a subgroup of only three survived the drop in membership of the subgroup (and the Board) to only two. Although the statutory language is convoluted, we relied on two factors to conclude that the Board’s powers had lapsed. We focused first on the most persuasive language — “[t]he quorum provision clearly requires that a quorum of the Board is, ‘at all times,’ three members,” id. at 473. (cit *686 ing 29 U.S.C. § 153(b)) — but we also relied on general agency principles reasoning broadly that an agent — in that case, the two member Board panel — lost its authority when the Board — the principal — lost its quorum. We never mentioned Chevron, implicitly concluding that the combination of the two factors ineluctably pointed to only one interpretation. As Judge Sen-telle writes in the companion case, “Laurel Baye concluded that § 153(b)’s quorum requirement provision unambiguously requires the Board to have a quorum for a delegee to exercise its authority.” SSC Mystic Operating Co., 801 F.3d at 320, 2015 WL 5474118 at *16 (Sentelle, J., dissenting). The Supreme Court, reviewing the same issue in New Process Steel v. NLRB, came to the same conclusion, that the Board had lost its authority, but it relied primarily on different language in the section.[2] 560 U.S. 674, 679-83, 130 S.Ct. 2635, 177 L.Ed.2d 162 (2010). It explicitly did not adopt the general agency principles so important to our reasoning, recognizing that to do so would decide the very issue now before us — whether a regional director’s authority survives the loss of Board membership. Id. at 684 n. 4, 130 S.Ct. 2635. The Supreme Court wanted that issue to remain open in its court, but — and this is the crucial point — the Court implicitly recognized that it did not remain open in our court. Moreover, even though our sister circuits declined to adopt Laurel Baye, they have uniformly read it as did the Supreme Court: as having decided the validity of board delegations to nonmembers in the absence of a quorum.[3] Our agency reasoning was not, as the majority puts it, “separate,” it was integral to Laurel Baye’s statutory interpretation, and therefore applies equally to our ease. Indeed, it is a fortiori because we are dealing with a delegation, not to a subgroup of Board members, but rather to a much lesser-ranked official, a regional director.
Notwithstanding the Supreme Court’s interpretation of Laurel Baye, the majority would distinguish that case on the theory that a delegation to an agent with lesser authority (a regional director) somehow survives the disappearance of the principal, even though a more senior agent’s authority would not. It should be noted, the majority does not cite any case so holding. To give the government its due, the Board never makes this cockamamie argument (I thought we avoided relying on arguments not presented by parties because to do so suggests we are result-oriented). In any event, I do not understand why the regional director’s authority is described as “non-final” when the very issue in this case is whether the regional director’s certification of an election is final.
*687 II.
As I noted above, I think that if we were not bound by Laurel Baye, I would still regard the Board’s contention that the regional director’s authority to certify an election extends indefinitely, even if the Board went out of existence for years, as an impermissible construction of the statute.
The majority acknowledges the statute does not address the question whether the regional director’s power lapses when the Board loses its quorum or ceases to exist, but contends that that is a statutory “silence” under the Chevron doctrine, which the NLRB is authorized to fill. And it asserts that the Board’s interpretation is reasonable under Chevron’s second step. Actually, if Chevron applied, I think such an interpretation would be flatly unreasonable. We must bear in mind that even if we are following Chevron’s second step, we are construing a Congressional act— the second step is not open sesame for the Agency. After all, the rest of that statutory section deals specifically, although in a rather convoluted fashion, with the circumstances in which the Board loses authority because of a lack of a quorum. It is quite incredible that Congress would nevertheless have implicitly bestowed on regional directors permanent authority ad infini-tum, even in the total absence of a supervising Board. It should be noted that neither the majority opinion nor Judge Edwards’s and Judge Srinivasan’s concurrences grapple with the statutory structure or language to reach their conclusion that the interpretation they adopt is actually “reasonable.”
Be that as it may, we cannot affirm the Board based on Chevron deference in this case. The Board never purported to interpret an ambiguity in the statute. Instead, it boldly asserted that, pursuant to the statute, “NLRB Regional Directors remain vested with the authority to conduct elections and certify their results regardless of the Board’s composition at any given moment.” UC Health & UC Health Pub. Safety Union, 860 N.L.R.B. No. 71, *1 n. 2 (Mar. 31, 2014). We have held repeatedly that “[djeference to an agency’s statutory interpretation is only appropriate when the agency has exercised its own judgment, not when it believes that interpretation is compelled by Congress.” Arizona v. Thompson, 281 F.3d 248, 254 (D.C.Cir.2002) (internal citations and emphasis omitted). See also Peter Pan Bus Lines, Inc. v. Fed. Motor Carrier Safety Admin., 471 F.3d 1350, 1354-55 (D.C.Cir.2006); Transitional Hosps. Corp. v. Shalala, 222 F.3d. 1019, 1029 (D.C.Cir.2000). The majority argues that the Board never explicitly stated that the statute compelled the construction, but what else can the Board have intended when it flatly states what the statute meant.[4]
Moreover, the Supreme Court has rejected Chevron’s applicability to section 3(b). Even though the language the Supreme Court relied on, as I noted, is rather convoluted, the Supreme Court’s opinion in New Process Steel never mentioned Chevron — despite the government’s reliance on Chevron deference in its Supreme Court brief. Although the Court’s opinion frankly acknowledged two possible interpretations of what it called section 3(b)’s delegation clause, it simply picked the one it thought preferable — leading to the same result we chose in Laurel Baye. See New Process Steel, 560 U.S. at 679-83, 130 S.Ct. 2635. It is, therefore, decisive, for our purposes, that the Court implicitly but necessarily concluded that, for whatever rea *688 son, Chevron deference was inappropriate in construing section 3(b). See SSC Mystic Operating Co., 801 F.3d at 320, 2015 WL 5474118 at *16 (Sentelle, J., dissenting). In that regard, the other circuits, construing the companion language dealing with the General Counsel’s delegated authority to seek 10(j) injunctions, have followed the Supreme Court’s lead and have ignored Chevron,[5]
.1: * *
Judge Srinivasan’s concurrence in the companion case disagrees with the majority’s conclusion that the panel’s decision in Laurel Baye was based on an unambiguous reading of the plain language, and chooses to read Laurel Baye as only adopting the “best” reading of an ambiguous statute.[6] By so doing, Judge Sriniva-san essentially accuses the Laurel Baye panel of disregarding governing law applying to judicial review of agency statutory interpretations in formal adjudication. That governing law, Chevron — with certain specific exceptions, such as avoidance of serious constitutional issues[7] — for over thirty years has banned courts of appeal from doing exactly what Judge Srinivasan accuses the Laurel Baye panel of doing; rejecting an agency statutory interpretation of supposedly ambiguous language in favor of what a reviewing court" believes is a better or best reading.
Judge Srinivasan relies on Brand X as support for his analysis — suggesting that it allows a court reviewing agency interpretation of ambiguous language to choose the better interpretation. But that is a flagrant misreading of the case. Brand X applies in situations quite apart from Laurel Baye. The first is the question of how do reviewing courts deal with a pre-Chev-ron judicial decision if the agency subsequently disagrees. The Supreme Court explained that if a prior judicial decision announced the only acceptable interpretation of a statute that opinion governed, but if the earlier judicial opinion — properly read — only relied on a better interpretation, the agency was free to ádopt a different reasonable construction. The second situation involves a judicial affirmance of a prior agency interpretation. Again, the agency can change its interpretation to another reasonable one if the prior judicial opinion was limited to accepting the agency interpretation as reasonable. The third situation, as occurred in Brand X itself, is when an agency departs from a prior judicial decision that had reviewed the interpretation of an entity not entitled to Chevron deference.[8] Because the previous *689 court needn’t have deferred under Chevron, it may have opted for the “best,” but not the only permissible, interpretation. The agency may thus later adopt another reasonable construction. None of those situations apply here. Brand X hardly suggested that in the future courts may reject a federal agency statutory interpretation as not the “best one,” which would be inconsistent with Chevron.
Judge Srinivasan suggests, although he does not quite assert, that significance should be placed on the fact that the NLRB did not seek Chevron deference in Laurel Baye. But that is often true when an agency believes its interpretation is compelled by the statute. Indeed, in Laurel Baye, as in many other cases, the agency flatly asserted that its reading resulted from the plain language of the statute, rather than an exercise in discretion. That is not a hypothesis, as Judge Sriniva-san suggests; it is the obvious reading of the Board’s decision. And as Judge Sen-telle points out, because the statute was thought by the panel to be unambiguous, Chevron was irrelevant. The important principle of administrative law is that federal courts of appeals for almost 30 years have followed Chevron’s command (with certain recognized exceptions) that agency interpretations of ambiguous language in a formal adjudication, see United States v. Mead Corp., 533 U.S. 218, 121 S.Ct. 2164, 150 L.Ed.2d 292 (2001), are entitled to deference and affirmance if reasonable. That is so — and there are no deviations in our cases — notwithstanding whether Chevron ’s familiar two-step analysis is explicitly “walk[ed] through,” see SSC Mystic Operating Co., 801 F.3d at 316, 2015 WL 5474118 at *11 (Srinivasan, J., concurring). If we think, notwithstanding the agency’s claims, that a statute is actually ambiguous, we are not free to disregard Chevron and opt for our own “best” reading, as Judge Srinivasan seems to suggest we can. We must instead remand to an agency for its subsequent resolution of the ambiguity. See PDK Labs. Inc. v. U.S. DEA, 362 F.3d 786, 798 (D.C.Cir.2004). Chevron is as much a principle of judicial review of agency action as is Chenery[9] or Vermont Yankee.[10]
Judge Srinivasan searches for another reason Chevron may not have been applied. He suggests that the Laurel Baye panel may have secretly denied deference based on an argument made by the company in Laurel Baye — that Chevron deference was inappropriate because the issue went to the Board’s jurisdiction. To be sure, this was a question which once troubled panels of this court. See New York Shipping Ass’n, Inc. v. Federal Maritime Comm’n, 854 F.2d 1338, 1363 (D.C.Cir.1988); Nat’l Wildlife Fed’n v. ICC, 850 F.2d 694, 699 (D.C.Cir.1988); American Civil Liberties Union v. FCC, 823 F.2d 1554, 1567 n. 32 (D.C.Cir.1987). But since 1990 we have consistently rejected that concept as an exception to Chevron.[11] See Connecticut Dep’t of Pub. Util. Control v. FERC, 569 F.3d 477, 481 (D.C.Circ.2009); Nat’l Ass’n of Regulatory Util. Comm’rs v. FERC, 475 F.3d 1277, 1279 (D.C.Cir.2007); Detroit Edison Co. v. FERC, 334 F.3d 48, 53 (D.C.Cir.2003); Transmission Access Policy Study Group v. FERC, 225 F.3d 667, 694 (D.C.Cir.2000); Oklahoma Natural Gas Co. v. FERC, 28 F.3d 1281, 1284 (D.C.Cir.1994); Bus. Roundtable v. SEC, 905 F.2d 406, 408 (D.C.Cir.1990). The *690 cases cited by Judge Srinivasan, with all due respect for the University of Illinois Law Review, do not stand for the contrary proposition; they don’t even mention agency “jurisdiction.” It is flatly inconceivable that any panel would accept Judge Sriniva-san’s hypothetical reasoning sub silentio.[12]
In sum, since Laurel Baye failed to accept the agency’s interpretation, it must have been because it determined that the language was susceptible of only one meaning. It is the only explanation of Laurel Baye consistent with both Supreme Court commands and our own precedent.
Three of my colleagues have explored reasons not to follow Laurel Baye. I think they are all unpersuasive; Laurel Baye is binding precedent.
Regretfully I dissent.

. A party must seek Board review within 14 days of the regional director's issuance of a final disposition. 29 C.F.R. § 102.67(c) (as amended Dec. 15, 2014). The majority’s reading of the regulation appears incorrect.

. Although the Supreme Court’s footnote four is at least clear in not adopting Laurel Baye's agency rationale, its reasoning explaining why it does not is impenetrable.

. See Kreisberg v. HealthBridge Mgmt., LLC, 732 F.3d 131, 140 (2d Cir.2013); Frankl v. HTH Corp., 650 F.3d 1334, 1354 (9th Cir.2011); Osthus v. Whitesell Corp., 639 F.3d 841, 844 (8th Cir.2011); Overstreet v. El Paso Disposal, L.P., 625 F.3d 844, 852-54 (5th Cir.2010) (“[Laurel Baye] held that when the Board’s membership drops to two, it loses its quorum and '[i]n the context of a board-like entity, a delegee's authority therefore ceases the moment the vacancies or disqualifications on the board reduce the board's membership below a quorum.’ ”). These circuit cases deal with the General Counsel of the Board’s authority to continue to seek 10(j) injunctions when the Board loses its quorum. Board delegations of duties to the General Counsel are governed by a separate statutory provision. See 29 U.S.C. § 153(d). The General Counsel — a Presidential appointee — has unre-viewable discretion to seek a complaint whether or not the Board is in existence. Therefore it is reasonable to conclude that the Board’s permanent delegation to the General Counsel to seek an injunction is simply an addition to his or her authority to file a complaint.

. If the majority was correct in concluding that Chevron applied, it certainly should remand and allow the agency to exercise its judgment. See PDK Labs. Inc. v. U.S. DEA, 362 F.3d 786, 798 (D.C.Cir.2004).

. With the exception of one concurring Eighth Circuit Judge. See Osthus, 639 F.3d at 845-48 (Colloton, J. concurring).

. Judge Srinivasan ignores the fact that the Supreme Court’s decision — both the majority and the dissent as Judge Sentelle points out, see SSC Mystic Operating Co., 801 F.3d at 320, 2015 WL 5474118 at *16 (Sentelle, J., dissenting) — ignored Chevron, or its doctrine, in deciding New Process Steel — which certainly indicates, as I have argued above, that Chevron is not to be used in interpreting section 3(b), as Judge Srinivasan does. Granted, the Supreme Court in New Process Steel did ignore Chevron without explanation, but it is not subject to the same restraints which bind lower federal courts.

. See Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Construction Trades Council, 485 U.S. 568, 108 S.Ct. 1392, 99 L.Ed.2d 645 (1988).

. Brand X reviewed an agency interpretation that departed from a previous judicial construction in AT & T Corporation v. City of Portland, 216 F.3d 871 (9th Cir.2000). AT & T itself did not apply Chevron in its analysis— and opted for the best, not the only, interpretation — because it was reviewing the construction of a local, municipal franchising board (an entity to which Chevron deference was not owed).

. See SEC v. Chenery Corp., 332 U.S. 194, 67 S.Ct. 157, 91 L.Ed. 1995 (1947).

. See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, 435 U.S. 519, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978).

. Of course, the Supreme Court subsequently put the issue to rest in City of Arlington v. FCC, - U.S. -, 133 S.Ct. 1863, - L.Ed.2d - (2013).

. It is worth noting that the Laurel Baye panel members Judges Williams, Sentelle, and Tatel had, collectively, nearly 60 years of experience reviewing agency statutory interpretations.