NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No. CC-12-1238-PaDKi |
| ) | |
| ROBERT LEWIN, ) | Bankr. No. 10-13047 |
| ) | |
|         Debtor. ) | Adv. No. 10-1427 |
| _____) | |
| ) | |
| PETER SZANTO, ) | |
| ) | |
|         Appellant, ) | |
| ) | |
| v. ) | **M E M O R A N D U M**[1] |
| ) | |
| ROBERT LEWIN, ) | |
| ) | |
|         Appellee. ) | |
| _____) | |

Argued and Submitted on June 20, 2013
at Pasadena, California

Filed - July 3, 2013

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Deborah Saltzman, U.S. Bankruptcy Judge, Presiding

_____

Appearances:  Appellant Peter Szanto and Appellee Robert Lewin
argued pro se.

_____

Before: PAPPAS, DUNN and KIRSCHER, Bankruptcy Judges.

_____

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Alleged creditor Peter Szanto ("Szanto") appeals the decision of the bankruptcy court dismissing his adversary complaint against chapter 7[2] debtor Robert Lewin ("Lewin") for lack of standing.  We VACATE and REMAND.

**FACTS**

Szanto is a licensed real estate broker in California.  Lewin is a member of the California bar.

The dispute between Szanto and Lewin began in 2003 and eventually spawned several civil actions and probate proceedings. We have inadequate information in the record to detail these matters, except that they appear to implicate disputes between Lewin and Szanto, and other members of Szanto's family, including his late son Phillip, over family trust and estate matters.  Lewin was seemingly involved in these disputes as a friend and attorney of Phillip.

Of direct interest in this appeal is a lawsuit filed in state court on May 14, 2008, <u>Szanto v. Lewin</u>, no. 499366 (Superior Court Riverside County) (the "Riverside Action").  Szanto's complaint against Lewin alleged two causes of action: (1) That Lewin negligently interfered with Szanto's business plans for his son. More specifically, Szanto alleged that he had trained his son to be his partner in his real estate brokerage business, and although Phillip had qualified as a broker, he was spending increasing amounts of time in Lewin's company. (2) For intentional torts, and in particular, that Lewin removed mail from Szanto's mailbox; that

---

[2]  Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

Lewin made untrue statements to San Mateo Protective Services so as to obtain personal information about Szanto; that Lewin intentionally trespassed in Szanto's home with intent to commit a felony; that Lewin intentionally published untrue statements about Szanto; and that Lewin represented to Phillip that Lewin loved Phillip more than his father, Szanto. When Lewin did not respond to Szanto's complaint, a clerk's default was entered against Lewin in the Riverside Action on May 11, 2009. However, no default judgment was entered by the state court.

Lewin filed a chapter 13 petition on February 3, 2010. Neither his schedules nor his statement of financial affairs mentioned the pending legal proceedings with Szanto. Lewin converted the case to one under chapter 7 on March 24, 2010.

On May 17, 2010, Szanto filed a motion for relief from the automatic stay in the bankruptcy case seeking permission to continue his prosecution of the Riverside Action. Lewin responded on June 4, 2010, arguing that Szanto's claims in the Riverside Action were frivolous and a sham, and noting that a judgment had not been entered. The bankruptcy court held a hearing on Szanto's motion on June 17, 2010, with Szanto and Lewin both appearing pro se. After apparently reciting its oral findings and conclusions, the court granted the motion authorizing Szanto "to proceed to judgment in the state court"; a transcript of this hearing is neither included in the excerpts nor on the bankruptcy court's docket. Lewin did not appeal this order.

Szanto then commenced the adversary proceeding involved in this appeal on July 6, 2010. The complaint somewhat tracked the allegations made in the state court complaint. Szanto's first

-3-

claim for relief in the complaint sought an exception to discharge under § 523(a)(6) for the debts arising from the various intentional torts Lewin allegedly committed as asserted in the Riverside Action. The second claim for relief, read liberally, requests that Lewin be denied a discharge under § 727(a)(2) because Lewin had allegedly concealed assets, including a gold Rolex watch and a gold Montblanc pen, and because Lewin's statement in his schedules that a valuable stamp collection was worth only $2500 was false. Szanto's third claim alleged that Lewin's bankruptcy was filed in bad faith, to avoid a possible judgment in the Riverside Action. There is no specific relief requested concerning this claim.

Lewin filed an answer to the complaint on August 18, 2010, asserting, inter alia, that: (1) Szanto was not a creditor because he held no viable claim against Lewin; (2) no judgment had been entered in the Riverside Action; (3) Lewin, as attorney for Phillip, was immune from prosecution for the actions he took in representing his client; and (4) Szanto is an adjudged vexatious litigant.

Szanto sought to amend his complaint on November 24, 2010, to add claims for denial of Lewin's discharge under § 727(a)(3) and (4). He also sought to compel discovery responses from Lewin and requested an award of discovery sanctions, an order rejecting the U.S. Trustee's report filed in Lewin's case, and requiring the U.S. Trustee to reexamine Lewin's schedules and reevaluate Lewin's eligibility for bankruptcy relief under the means test. Lewin responded to Szanto's request to amend the complaint on December 16, 2010, again asserting that Szanto was not a creditor

-4-

and was a vexatious litigant. The bankruptcy court held a hearing on Szanto's various motions on December 20, 2010. There is no transcript in the record or docket, but the court's docket entry indicates that Szanto's motions were denied. On April 12, 2011, the bankruptcy court entered an order denying all of Szanto's motions.

The bankruptcy court then, sua sponte, on May 10, 2011, entered an Order to Show Cause ("OSC 1") directing Lewin to appear and explain why his answer should not be stricken and default entered against him for his failure to defend. Szanto moved for summary judgment on May 12, 2011, arguing that there were no issues of material fact to be determined and judgment should be entered in the adversary in his favor as a matter of law.

Lewin and Szanto exchanged a series of replies and objections to OSC 1 and the summary judgment motion, generally arguing about Szanto's creditor status and Lewin's assertions that Szanto's claims were without merit and whether unresolved material questions of fact remained.

The bankruptcy court held a hearing on Szanto's motion for summary judgment on June 24, 2011. There is no transcript of the hearing in the record or docket. However, the court's minute entry on the docket states:

> DENIED. Tentative Ruling. This is the Plaintiff's motion for summary judgment. It is the moving party's burden to establish grounds for summary judgment — specifically, that the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also In re Mannie, 258 B.R. 440, 443 (Bankr. N.D. Cal. 2001). Here the Plaintiff has filed an adversary proceeding to

determine that Defendant's debt is not dischargeable under section 523(a)(6) of the Bankruptcy Code. However, the Plaintiff falls far short of meeting its burden. Nowhere does Plaintiff specify the exact debt or claim he seeks to have determined nondischargeable, let alone list a specific damage figure amount. The parties are engaged in litigation (although the Plaintiff has agreed to dismiss certain actions) and there is no evidence of any judgment or default judgment in any court. There are still actions pending in state court. At this stage, there are genuine issues of material fact yet to be determined including the existence and amount of the debt at issue.

As can be seen, the bankruptcy court's docket entry identifies this notation as a "tentative ruling," but places the word DENIED in caps. There is no indication in the docket that a formal order was entered denying the motion for summary judgment.

The bankruptcy court, again acting sua sponte, on December 9, 2011, entered another Order to Show Cause to Lewin to appear and explain why the court should not strike his answer and enter default ("OSC 2"). Lewin and Szanto again exchanged responses, with Szanto suggesting that Lewin failed to attend hearings, and Lewin answering that he had attended all noticed court proceedings and hearings.

There is no indication in the docket that the bankruptcy court ever heard or ruled on OSC 2. Instead, on February 22, 2012, the court entered yet another sua sponte Order to Show Cause ("OSC 3"), but this time it was directed to Szanto and commanded him to appear at a hearing and explain why the adversary proceeding should not be dismissed because Szanto is not a creditor and thus lacks standing to prosecute the action. In OSC 3, the bankruptcy court explained that,

The Bankruptcy Code defines a "creditor" to be only those entities holding a "claim against the debtor that arose at the time of or before the order for

-6-

relief. . . . 11 U.S.C. § 101(10)(A). Further, the Bankruptcy Code defines "claim" to mean a right to payment" (see 11 U.S.C. § 101(5)(A) that the U.S. Supreme Court characterizes as "nothing more nor less than an <u>enforceable obligation.</u>" <u>Penna. Dep't of Pub. Welfare v. Davenport</u>, 495 U.S. 552, 559 (1990)(emphasis added); <u>Johnson v. Home State Bank</u>, 501 U.S. 78, 83-84 (1991). [Szanto] must appear and show cause and explain how entry of a default without the corresponding default obligation under California law sufficiently constitutes a legally "enforceable obligation" as contemplated by the U.S. Supreme Court in [Davenport].

Meanwhile, in the Riverside Action, in February 2012, Lewin had been successful in setting aside the default that had been entered against him; we do not have any information in the record or docket why the state court did so. We know, however, that Szanto immediately filed a First Amended Complaint in the Riverside Action on February 27, 2012, wherein he reasserted the causes of action against Lewin for tortious interference with business advantage, alienation of affection, identify theft, conversion, invasion of privacy, and wrongful death.

A default was again entered in the Riverside Action against Lewin on March 29, 2012. Lewin again moved to set aside the default on April 11, 2012, asserting, inter alia, that he had appeared in the Riverside Action on February 24, 2012, that Szanto's proof of service of the First Amended Complaint was a "lie and sham," and that, in any case, Cal. Code Civ. Proc. § 739 provides that a default must be set aside when an attorney presents a declaration that his failure to respond was a result of mistake. Lewin asserts that he filed a cross-complaint in the Riverside Action, but we have no information in the record concerning that cross-complaint.

Szanto then removed the complaint and cross-complaint to the

-7-

U.S. District Court for the Central District of California on April 11, 2012, asserting jurisdiction based on diversity of citizenship. Both Lewin and Szanto report that the District Court remanded the Riverside Action to the state court. We have no further information on the status of the Riverside Action in the record or docket.

The bankruptcy court held a hearing on OSC 3, the order to Szanto to explain why the adversary should not be dismissed, on May 10, 2012. After hearing from Szanto and Lewin, who both appeared without counsel, the court announced its decision on the record:

> Any creditor may file a complaint to obtain a determination of the dischargeability of debt. . . . A creditor is any entity that has a claim against the debtor that arose at the time or before the order for relief. . . . The definition of claims [is] found in Section 101(5) . . . a right to payment whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or a right to an equitable remedy. . . . <u>Pa. Dep't of Pub. Welfare v. Davenport</u> . . . states that a right to payment is nothing more nor less than an enforceable obligation. We've got substantial guidance from all the case law that a claim is to be defined broadly because the Bankruptcy Code contemplates that all of the debtor's legal obligations ought to be dealt with within the context of the bankruptcy case. . . . [U]nder California law, does the Plaintiff have an enforceable obligation against the Defendant. . . . The Plaintiff has argued . . . there is still this entry of default, and that creates the right to payment that gives the Plaintiff standing in this case. I don't agree that that's a correct statement of the law. . . . While we have an entry of default under California law, that simply doesn't establish a legally enforceable obligation. . . . So, for that reason, I am going to enter an order dismissing this cause of action.

Hr'g Tr. 24:11-27:11, May 10, 2012.

The bankruptcy court entered an order dismissing the

-8-

adversary proceeding on May 15, 2012.[3]  Szanto filed a timely appeal on May 29, 2012.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A) and (I).  We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in dismissing Szanto's adversary proceeding for lack of standing.

## STANDARD OF REVIEW

A trial court's sua sponte dismissal of an action for lack of standing is reviewed de novo.  Bernhardt v. Cnty. of Los Angeles, 279 F.3d 862, 867 (9th Cir. 2002).

## DISCUSSION

Rule 4007(a) provides that "a debtor or any creditor may file a complaint to obtain a determination of the dischargeability of any debt."  See also § 523(c) (providing that the bankruptcy court may, "upon request of a creditor to whom such debt is owed" determine whether a debt is excepted from discharge under § 523(a)(2), (4), or (6)).  Further, § 727(c)(1) provides that "the trustee, a creditor, or the United States trustee may object to the granting of a discharge under subsection (a) of this title."  Szanto is not the debtor, trustee or United States trustee in this case, and thus may only prosecute a complaint for exception to discharge, or for denial of Lewin's discharge, if he

---

[3]  Szanto filed a motion to vacate the dismissal on May 22, 2012.  The bankruptcy court denied the motion in an order entered on May 23, 2012.

-9-

is a "creditor."

As it explained at the May 10, 2013 hearing on OSC 3, the bankruptcy court dismissed Szanto's complaint because he was not a creditor and therefore lacked standing to pursue this action for an exception to discharge. The case law instructs us that we are to review sua sponte dismissals for lack of standing as if raised in a motion to dismiss under Civil Rule 12(b)(6), made applicable in bankruptcy adversary proceedings by Rule 7012, and that we must accept all factual allegations of the complaint as true and draw all reasonable inferences in favor of Szanto. Jewel v. Nat'l Sec. Agency, 673 F.3d 902, 907 (9th Cir. 2011).

Although perhaps poorly drafted, Szanto's complaint appears to seek the following relief: (1) an exception to discharge of his claims raised in his state court action under § 523(a)(6); (2) a denial of discharge under § 727(a) for concealment of assets; and (3) denial of discharge for Lewin's bad faith in filing the bankruptcy case. Our review of the facial allegations in the complaint is guided by instructions from the Supreme Court. "[D]etailed factual allegations" are not required. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). But,

> a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [Twombly, 550 U.S. at 570]. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. [Twombly, 550 U.S. at 556].

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).[4]

---

[4] It appears that the bankruptcy court only considered Szanto's complaint as seeking exception to discharge for his
(continued...)

-10-

A review of Szanto's complaint shows that he pled a claim for exception to discharge under § 523(a)(6) for intentional torts he had asserted in a state court lawsuit (tortious interference with business advantage, theft of mail, deprivation of civil rights, alienation of affection, abuse of judicial process, malicious prosecution, barratry, defamation, subornation of fraudulent real property transfer and intentional infliction of emotional distress). It is not challenged that intentional torts may form the basis for an exception to discharge under § 523(a)(6), yet there still must be proof of willful and malicious injury. Kawaauhau v. Geiger, 523 U.S. 57, 63 (1998).[5] However, the bankruptcy court did not examine the claims in the complaint for their plausibility. Rather, the court based its dismissal on its conclusion that Szanto lacked standing. See Chubb Custom Ins. Co. v. Space Sys., 710 F.3d 946, 952 (9th Cir. 2013) (holding that a trial court may dismiss a claim under Civil Rule 12(b)(6) where a complaint is not plausible because the party bringing the

[4](...continued)
claims. Of course, Szanto's complaint also contained a claim for denial of discharge under § 727(a). To the extent that Szanto has presented in the complaint factual allegations that Lewin failed to properly account for valuable assets, i.e., a gold Rolex watch, a gold Montblanc pen, and an undervalued stamp collection, although inartfully pled, it would appear Szanto has met the minimum threshold factual presentation for facial plausibility of a claim for denial of discharge. Iqbal, 556 U.S. at 663.

[5] At least as to one of those asserted torts, theft of mail (which we interpret to implicate the tort of conversion, an intentional tort under California law), Szanto asserted in the complaint as fact known to him personally that his mail had been stolen from his residence, that he had reported it to the U.S. postal inspectors, and that Lewin had returned part of it. Although a weak argument, it was sufficient to meet the minimum threshold factual presentation for facial plausibility of at least one claim in the complaint. Iqbal, 556 U.S. at 663.

-11-

complaint does not have standing.).

As it explained, the bankruptcy court's decision was premised on the interplay of several terms in the Bankruptcy Code and one Supreme Court decision. The court's reasoning, as set forth in OSC 3, appears to be as follows: The Code provides that a creditor is any "entity that has a claim against the debtor that arose at the time of or before the order for relief." § 101(10)(A). A claim, in turn, is defined as a "right to payment, whether or not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]" § 101(5)(A). The Supreme Court has observed that a "right to payment is "nothing more nor less than an enforceable obligation." Pa. Dep't of Pub. Welfare v. Davenport, 495 U.S. 552, 558 (1990). Since no judgment had been entered in Szanto's favor against Lewin in the Riverside Action, Lewin did not have an enforceable obligation under California law to pay Szanto. Therefore, Szanto is not a creditor in Lewin's bankruptcy case and lacks standing to prosecute the adversary proceeding.

However, the bankruptcy court's analysis that the Supreme Court in Davenport equated the "enforceable obligation" definition for a claim with the entry of a judgment in favor of the creditor is shaky. The cases interpreting Davenport we have located instead hold that the term "enforceable obligation" refers to a potentially enforceable obligation – not necessarily one reduced to judgment, but rather one capable of being enforced:

> There is no claim against a debtor's bankruptcy estate
> without a "right to payment," however uncertain, and a
> claim must ultimately find some foundation in an

-12-

> obligation that a creditor — at some point in time and under some conditions — could enforce against a debtor. Such right need not be immediately enforceable at the time of filing for the right to constitute a claim. A claim may be contingent or unmatured yet remain a claim for purposes of bankruptcy law. At the time of a bankruptcy petition, however, there must be a right at least potentially enforceable by a creditor.

In re Spencer, 457 B.R. 601, 606 (E.D. Mich. 2011);

In re Schechter, Bankr. LEXIS 3796 at *13 (Bankr. E.D. Va. 2012) (same).

That the Supreme Court meant that the obligation upon which a claim is founded must be enforceable at some point in time and under some circumstances is evidenced by the context in Davenport.

> Our construction of the term "debt" is guided by the fundamental canon that statutory interpretation begins with the language of the statute itself. Landreth Timber Co. v. Landreth, 471 U.S. 681, 685 (1985). Section 101(11) of the Bankruptcy Code defines "debt" as a "liability on a claim." This definition reveals Congress' intent that the meanings of "debt" and "claim" be coextensive. See also H.R. Rep. No. 95-595, p. 310 (1977); S. Rep. No. 95-989, p. 23 (1978). Thus, the meaning of "claim" is crucial to our analysis. A "claim" is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(4)(A). . . . As is apparent, Congress chose expansive language in both definitions relevant to this case. For example, to the extent the phrase "right to payment" is modified in the statute, the modifying language ("whether or not such right is . . .") reflects Congress' broad rather than restrictive view of the class of obligations that qualify as a "claim" giving rise to a "debt." See also H.R. Rep. No. 95-595, supra, at 309 (describing definition of "claim" as "broadest possible" and noting that Code "contemplates that all legal obligations of the debtor . . . will be able to be dealt with in the bankruptcy case"); accord, S. Rep. No. 95-989, supra, at 22.

Davenport, 495 U.S. at 557-58. As can be seen, in Davenport, the Court was explicating its long-held view that Congress meant the broadest possible interpretation of "claim" in the Code, that

-13-

a claim <u>need</u> <u>not</u> be reduced to judgment, and that a claim could include, as explicitly provided in the statute, contingent, unliquidated, disputed claims — claims which by their definition would not be reduced to judgment or necessarily presently enforceable.

In the Code, "[t]he term 'claim' means – right to payment whether or not such right is reduced to a judgment, liquidated, unliquidated, fixed, contingent, mature, unmatured, disputed, undisputed, legal, equitable, secured or unsecured . . . ." § 101(5)(A). Obviously, Szanto's intentional tort claims asserted in state court against Lewin are disputed and unliquidated; they are also contingent. A claim is "contingent" when the debtor's legal duty to pay it does not come into existence until triggered by the occurrence of a future event. <u>Imagine Fulfillment Servs., LLC v. DC Media Capital, LLC (In re Imagine Fulfillment Servs., LLC)</u>, 489 B.R. 136, 148 (Bankr. C.D. Cal. 2013); <u>Lubit v. Chase (In re Chase)</u>, 372 B.R. 125, 132 (Bankr. S.D.N.Y. 2007) (same). The Ninth Circuit has held that intentional tort claims are contingent. <u>Engquist v. Or. Dep't of Agric.</u>, 478 F.3d 985, 1003 (9th Cir. 2007) (tort claims are contingent "by their nature"); <u>In re Consol. U.S. Atmospheric Testing Litig.</u>, 820 F.2d 982, 989 (9th Cir. 1987) (tort claims are contingent because their value is inchoate until reduced to judgment).

Clearly, then, while Szanto did not have the benefit of a state court judgment adjudging Lewin liable to him for specific damages on his tort claims, they were no less "claims" for purposes of the bankruptcy case. The bankruptcy court's apparent requirement that a "right to payment" on account of an intentional

-14-

tort obligation requires a judgment in order to constitute an enforceable obligation is inconsistent with Bankruptcy Code provisions indicating a judgment is not a condition of a claim. United States v. Galletti, 541 U.S. 114, 124 n.5 (2004) (citing § 101(5)(A) for the proposition that a claim is allowable in bankruptcy "whether or not such right is reduced to judgment.").[6] Courts may not give effect to one provision of a statute that renders another provision of that statute superfluous. New Process Steel v. NLRB, 130 S. Ct. 2635, 2644 (2010). In this case, the bankruptcy court's interpretation of the "enforceable obligation" language in Davenport is at odds with the actual text of the Bankruptcy Code recognizing that Szanto may hold a claim in the bankruptcy case "whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured[.]" § 101(5)(A). On the basis of the allegations in his complaint, Szanto was a creditor (i.e., an entity that held a claim against Lewin that arose before the bankruptcy) and, as such, he had standing to pursue an exception to discharge for purposes of Rule 4007(a). Since Szanto was a creditor of Lewin's bankruptcy estate, he also had standing under § 727(c) to assert a claim for denial of Lewin's discharge.

## CONCLUSION

Szanto is a creditor in Lewin's bankruptcy case, and the bankruptcy court therefore erred in dismissing the complaint on

---

[6] It also seems inconsistent that, on the one hand, the bankruptcy court would grant Szanto stay relief to pursue his state court claims against Lewin and then, later, rule that Szanto was not a creditor because he held no enforceable obligation.

-15-

the grounds that Szanto lacked standing because he was not a creditor. We therefore VACATE the bankruptcy court's order dismissing Szanto's complaint with prejudice and REMAND this matter for further proceedings.[7]

---

[7] On remand, the bankruptcy court may consider a stay of this adversary proceeding pending resolution of the causes of action in the state court.