MILLETT, Circuit Judge,
dissenting:
I certainly understand my colleagues’ concern that an agency’s persistent defiance of uniform-and settled circuit precedent could ignite a separatión-of-powers firestorm. But this case is nothing like that, and I strongly disagree that a bad-faith award of all the fees that Heartland incurred in this appeal is warranted.
Awarding fees for bad faith is an exceptional sanction that should only be employed “when extraordinary circumstances or dominating reasons of fairness so demand.” Nepera Chem., Inc. v. Sea-Land Serv., Inc., 794 F.2d 688, 702 (D.C. Cir. 1986). The standards for bad faith “are necessarily stringent,” Lipsig v. National Student Mktg. Corp., 663 F.2d 178, 180 (D.C. Cir. 1980) (quotation marks and citation omitted), requiring a factual finding that “the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.” Alyeska Pipeline Serv. Co. v. Wilderness Soc’y, 421 U.S. 240, 258, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975) (internal quotation marks, omitted). Moreover, “[b]e-cause inherent powers” like an attorneys’ fees sanction for bad faith “are shielded from direct democratic concerns, they must be exercised with restraint and discretion.” Roadway Exp., Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 65 L.Ed.2d 488 (1980). That especially demanding standard is not met in this case, for four reasons.
■First, for all of the majority opinion’s concerns about an agency thumbing its nose at settled decisional law, this case involves an issue on which there is an inter-circuit conflict and on which the Board’s position accords with the majority view. Compare Local Union 36, Int'l Bhd. of Elec. Workers, AFL-CIO v. NLRB, 706 F.3d 73, 81-82 (2d Cir. 2013) (adopting the Board’s “clear and unmistakable waiver” test); Local Joint Exec. Bd. of Las Vegas v. NLRB, 540 F.3d 1072, 1079-1080 & n.11 (9th Cir. 2008) (same); Beverly Health & Rehab. Servs., Inc. v. NLRB, 297 F.3d 468, 481-482 (6th Cir. 2002) (same); Capitol Steel & Iron Co. v. NLRB, 89 F.3d 692, 697 (10th Cir. 1996) (same), with Bath *30 Marine Draftsmen’s Ass’n v. NLRB, 475 F.3d 14, 25 (1st Cir. 2007) (adopting contract-coverage rule); NLRB v. United States Postal Serv., 8 F.3d 832, 836 (D.C. Cir. 1993) (same); Chicago Tribune Co. v. NLRB, 974 F.2d 933, 937 (7th Cir. 1992) (same). See also Mississippi Power Co. v. NLRB, 284 F.3d 605, 612-613 (5th Cir. 2002) (describing the competing standards).
So there has been no “putsch” here (Majority Op. 18). This case, by its terms, does not implicate at all the majority opinion’s concerns about a Board refusal to acquiesce in the face of .uniformly adverse circuit precedent. To be sure; the Board discussed a potentially sweeping realm for ■nonacquiescence in its brief. See NLRB Opp’n to Mot. for Att’y Fees at 13. But the bad faith for which we can authorize fees must have occurred in the Board’s actual conduct of its appellate litigation in the case at hand, not in a later overstatement in its opposition to attorneys’ fees concerning hypothetical facts not before us.
Second, the last time the Board was before this court 'on this very same issue, this court unanimously assured the Board that it had “every right” to “refuse[] to acquiesce in our analysis” of when and under what circumstances the terms of a collective bargaining agreement may discharge an employer’s collective-bargaining duties. Enloe Med. Ctr. v. NLRB, 433 F.3d 834, 838 (D.C. Cir. 2005). See generally, e.g., Independent Petroleum Ass’n v. Babbitt, 92 F.3d 1248, 1261 (D.C. Cir. 1996) (“[Ijntercircuit nonaequiescence is permissible, especially when the law is unsettled.”); American Tel. & Tel. Co. v. FCC, 978 F.2d 727, 737 (D.C. Cir. 1992) (acknowledging the agency’s'- “right to refuse to acquiesce in one (or more) court of appeals’ interpretation of its statute”); Johnson v. United States R.R. Ret. Bd., 969 F.2d 1082, 1093 (D.C. Cir. 1992) (noting the general right of an agency to engage in inter-circuit nonacquiescence, at least where its position has not been rejected. by' every circuit to address the question). The Board should not be labeled a “bad faith” actor for taking this court at its word and litigating the appeal at all, which is what the comprehensive award of attorneys’ fees for the entire appeal does.
In particular, I see nothing remotely approaching bad faith in requiring Heartland to file its petition for review and to prosecute its appeal by filing either an opening brief or, easier still, a motion for summary reversal, see D.C. Cir. Handbook of Practice and Internal Procedures VII.G.[1] That is because Heartland is located within the jurisdiction of .the Sixth Circuit, and the law of that circuit is on all fours with the Board’s “clear and unmistakable waiver” rule. See, e.g., Beverly Health, 297 F.3d at 480 (“A management-rights clause is a waiver of the union’s right to bargain over [mandatory subjects].”); id. (“A union can waive its statutory right to bargain [in a collective bargaining agreement], but such a waiver must be ‘clear and unmistakable.’ ”) (quoting Metropolitan Edison Co. v. NLRB, 460 U.S. 693, 708 (1983)); Uforma/Shelby Bus. Forms, Inc. v. NLRB, 111 F.3d 1284, 1290 (6th Cir. 1997) (similar).
Accordingly, as the majority opinion acknowledges (at 19-20, 26-27), there was nothing remotely bad faith about the Board’s application and enforcement of its “clear and unmistakable waiver” rule in the agency proceedings. And given the *31 Board’s decision, Heartland was destined to lose unless and until it sought judicial review- in this circuit rather than the Sixth Circuit. Had the Board filed first in the Sixth Circuit, Heartland’s petition for review would have been doomed. In short, having lost before the Board in a proceeding that quite properly applied the “clear and unmistakable waiver” rule, Heartland had to file a petition for judicial review in this circuit and had to affirmatively prosecute its appeal by filing an opening brief -or motion for summary disposition raising the contract-coverage issue to have a legal leg to stand on. I do not understand how it could be bad faith for the Board to require that Heartland do so.
The majority opinion says (at 26) that the Board should have known the case was destined for this circuit after remand, and thus apparently should have given up before Heartland even filed its petition. But as the circuit conflict attests, plenty of losing litigants before the Board have chosen to litigate in their home jurisdictions long after this court first adopted the “contract coverage” rule in 1993, see United States Postal Service, supra, and even after our reaffirmation of that rule in Enloe in 2005, see Bath Marine, supra, Local Union 86, supra, and Local Joint Exec. Bd., supra. Moreover, this court did not retain jurisdiction after granting the Board’s motion to dismiss the case in the wake of NLRB v. Noel Canning, 134 S. Ct. 2550 (2014). See Heartland Plymouth Court MI, LLC v. NLRB, No. 13-1227, 2014 WL 4627817 (D.C. Cir. Aug. 26, 2014). There thus was no guarantee that the second round of review would land here just because the first one did. Compare Starbucks Corp. v. NLRB, No. 09-1273 (D.C. Cir. Aug. 19, 2010) (dismissing petition for review on Board motion to reconsider in light of New Process Steel v. NLRB, 560 U.S. 674, 130 S.Ct. 2635, 177 L.Ed.2d 162 (2010)), with NLRB v. Starbucks Corp., 679 F.3d 70 (2d Cir. 2012) (second petition for review filed in and adjudicated by the Second Circuit).-
To be sure, the Board could have beaten Heartland to the punch by petitioning the Sixth Circuit for enforcement or moving to transfer the case to the Sixth Circuit. But the Board’s failure to deprive an employer of its chosen forum for review or to forgo imposing on the employer the additional costs of litigating a transfer motion cannot by itself meet the “stringent” requirement for bad faith, Nepera Chem., 794 F.2d at 702.
Third, the majority opinion (at 25-26) decries the Board’s failure to have sought certiorari to resolve the circuit conflict in an earlier case. But, again, the question is whether the Board litigated this appeal in bad faith, not whether it should have taken an additional procedural step in some other case. Sanctioning the Board for failing to seek certiorari is 'doubly inappropriate because the questions of whether and when-Supreme Court review should be sought to eliminate the conflict and establish a single, uniform federal rule rest exclusively with the Solicitor General in the Department of Justice and not with the Board. 28 U.S.C. § 518(a); see also 28 C.F.R. § 0.20 (Solicitor General is assigned duty of “[cjonducting, or assigning and supervising, all Supreme Court cases, including * * * petitions for and in opposition to certiorari”). Surely we cannot sanction as “bad faith” the Board’s failure to make a decision Congress has said it cannot make.
It also bears noting that cases in which the Board ends up at loggerheads with this court’s contract-coverage rule do not appear to arise with significant frequency. Since we first adopted the contract-coverage rule for Board cases in 1993 in United States Postal Serv., only Enloe and this *32 case have arisen in which the Board found itself directly at odds with circuit precedent. That is only two cases in 23 years. The Board, moreover, has won more than it has lost in circuit court decisions generally, and in this circuit has argued in other cases that its order can be sustained under either standard. See BP Amoco Corp. v. NLRB, 217 F.3d 869, 873 (D.C. Cir. 2000) (“Here, the Board acknowledges the force of the ‘covered by’ principle but contends it does not apply because the Board’s decision expressly found that the collective bargaining agreement did not incorporate the reservation of rights clauses.”). The frequency with which a conflict is joined and whether a Supreme Court decision in the particular case would have any practical effect on the outcome of the case— whether the dispute over the standard of review is outcome determinative—are among the traditional factors that the Solicitor General. could reasonably consider in selecting .the issues it chooses to present to the Supreme Court each year for certio-rari review. See Johnsonf 969 F.2d at 1097 (Buckley, J., concurring in part and dissenting in part) (discussing legitimate governmental considerations that may result in agency non-acquiescence in conflicting circuit decisions enduring for some time); see generally■ Margaret Meriweather Cor-dray & Richard Cordray, The Solicitor General’s Changing Role in Supreme Court Litigation, 61 B.C. L. Rev. 1323, 1328-1330 (2010) (discussing certiorari factors considered by Solicitors General).
Fourth, the award of fees for bad faith is an equitable exercise of the court’s inherent power to control litigation before it. See, e.g., Copeland v. Martinez, 603 F.2d 981, 984 (D.C. Cir. 1979) (award of fees seiwes. to “protect[ ] the integrity of the judicial process”). And in this case, Heartland bears responsibility for a not insignificant amount of the fees it incurred.
To begin with, given the clarity of our precedent, Heartland could have short-circuited this litigation by moving for summary reversal. To be sure, a party seeking summary disposition bears “the heavy burden of establishing that the merits of his case are so clear that expedited action is justified.” Taxpayers Watchdog, Inc. v. Stanley, 819 F.2d 294, 297 (D.C. Cir. 1987) (per curiam). But for many of the reasons the majority opinion discusses (at 19-20 & n.l), the law in this circuit was just that clear and plainly adverse to the Board’s position, making this a signature case for such summary disposition.
Contrary to the majority opinion’s suggestion (at 27 n.9), an opposition by the Board preserving its arguments for review en banc or by the Supreme Court would not have altered the straightforward task of panel disposition since the law of the circuit would have controlled. See, e.g., La-Shawn A. v. Barry, 87 F.3d 1389, 1393 (D.C. Cir, 1996) (en banc) (“[T]he same issue presented in' a later case in the’same court should lead to the same result.”) (emphasis in original).
Heartland chose instead to initiate the ordinary briefing process and to then file a full-throated opening brief that raised additional issues for our review beyond the contract-coverage dispute. Heartland’s failure to reasonably mitigate the fees it incurred should factor into the court’s decision to award fees for bad faith. See Wright v. Jackson, 522 F.2d 955, 958 (4th Cir. 1975) (“An award [of fees] for obstinacy, although a penalty, is only for the unnecessary efforts occasioned by the obstinacy.”); cf. Leffler v. Meer, 936 F.2d 981, 987 (7th Cir. 1991) (noting “the duty to mitigate legal fees by promptly, where possible, disposing of baseless claims through summary procedures”); Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 879 (5th Cir. 1988) (factoring into fee award *33 “the extent to which the nonviolating party’s expenses and fees could have been avoided or were self-imposed”).
Worse still, Heartland itself filed a vastly overblown application for fees that unjustifiably included the agency litigation that the Board had every right to pursue under the Sixth Circuit’s “clear and unmistakable waiver” precedent. Heartland thus has not exhibited the care and calibration that equity desires in those who themselves seek equity.
Having said that, the majority opinion (at 25-26) quite fairly calls the Board out for its failure to candidly acknowledge binding circuit precedent in its answering brief and for pressing only a gossamer-thin argument for distinguishing Enloe. Indeed, I might well have been persuaded that a small amount of fees should be awarded only for the portion of Heartland’s reply brief that was dedicated to rebutting the Board’s frail argument. But that is not the course that the majority opinion takes or that Heartland sought.
For the foregoing reasons, I respectfully dissent.

. See also Cascade Broad. Grp. v. FCC, 822 F.2d 1172, 1174 (D.C. Cir. 1987) (per curiam) ("We take this occasion to inform the bar that henceforth we will treat motions for summary disposition in appeals and petitions for review of agency action as we treat such motions in appeals from judgments of the district court:”).